**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 26 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HORSEBACK, INC., a Colorado
corporation,

        Plaintiff - Appellee,

v.

MAROUN J. TABET,

        Defendant - Appellant.

Nos. 99-1007
99-1065

(D. Colorado)

(D.C. No. 98-B-2489)

**ORDER AND JUDGMENT** *

Before **TACHA** , **McKAY** , and **ANDERSON** , Circuit Judges.

Defendant Maroun J. Tabet appeals from a final order of the district court

declaring a deed of trust to be spurious and a notice of lis pendens invalid, and

releasing them from encumbering certain real property owned by plaintiff,

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Horseback, Inc. He also appeals the district court's denial of his Fed R. Civ. P. 60(b) motion for relief from the judgment. We affirm. [1]

## BACKGROUND

In its simplest terms, this action involves the following basic facts: Horseback, Inc. is a Colorado corporation that owns two parcels of real property (the "Aspen Properties") in Pitkin County, Colorado. Mr. Tabet, a Lebanese national currently residing in Virginia, claims that Horseback owes him three million dollars, secured by a second deed of trust (the "Trust Deed") on the Aspen Properties. Horseback disputes that obligation and filed this action in an effort to have the Trust Deed and a notice of lis pendens removed, so it could proceed with development of its properties unencumbered by the cloud on its title created by the Trust Deed and the notice of lis pendens.

A full understanding of this troubled and troubling litigation, however, requires slightly more explanation. As the district court observed, certain facts are undisputed; others are subject to substantial dispute.

Prior to their purchase by Horseback, the Aspen Properties were owned by Aspen Pines Financial Corporation and Aspen Grove Financial Corporation,

---

[1]Both parties have filed motions to supplement the record on appeal. We grant both motions.

whose president was Jean Agbey. In September 1996, Jean Agbey executed a Deed of Trust Note (the "Note") in the maximum amount of three million dollars to his brother, Simon Agbey, as trustee. The Note was secured by the Trust Deed on the Aspen Properties.

In June 1997, Horseback bought the Aspen Properties from Aspen Pines and Aspen Grove. In an addendum to the purchase contract, the parties agreed that the Properties were encumbered by the Trust Deed, as well as two other security instruments. [2] A "Statement of Settlement" signed at the closing on the sale of the Properties also stated that Horseback assumed a second mortgage in the amount of three million dollars.

In March 1998, Jean Agbey, pursuant to a power of attorney purportedly granted to him by Simon, the original payee under the Note, endorsed the Note to Mr. Tabet. The Trust Deed was also assigned to Mr. Tabet. When no payments were made under the Note following the expiration of its maturity date, Mr. Tabet attempted to foreclose on the Trust Deed by filing a Notice of Election and Demand for Sale with the Public Trustee of Pitkin County. During this same time period, however, Mohamed A. Hadid, whom Horseback had employed to develop the Aspen Properties, initiated proceedings that resulted in the filing of a Release of Deed of Trust, purporting to release the Trust Deed on the ground that the Note

---

[2]The two other instruments were a first deed of trust and a mechanic's lien.

had been paid in full. The Release was filed on March 27, 1998, some three weeks after the endorsement purporting to assign the Note to Mr. Tabet.

Mr. Tabet claims the Release was obtained fraudulently, so he, along with Aspen Pines and Aspen Grove, filed an action in the district court for Pitkin County against the Public Trustee, Thomas C. Oken, seeking to void the allegedly fraudulently obtained Release of the Trust Deed. This so-called "Pitkin County Action" remains pending. Horseback has sought to intervene in the action; Mr. Tabet opposes such intervention. The state court has not yet ruled on Horseback's motion to intervene. [3] On November 4, 1998, Mr. Tabet filed a Notice of Lis Pendens against the Aspen Properties giving notice of the pendency of the Pitkin County Action. This is the Notice of Lis Pendens that, along with the Trust Deed, is at issue in this case.

In addition to this action, the parties to this case have also been involved in other litigation. In Al-Ibrahim v. Hadid, No. 96-B-2429 (D. Colo. filed Oct. 18, 1996) Mr. Tabet, through counterclaims, raised essentially the same claim as he makes in this case—i.e., that Horseback owes him three million dollars under the Note and is in default under the Note and Trust Deed. However, the day before

---

[3]Mr. Tabet filed a brief with the district court arguing that it should dismiss this action or abstain from deciding it until the Pitkin County Action concludes. Mr. Tabet does not argue that we should dismiss this appeal or abstain, so we do not address the issue.

their court-ordered depositions were to be taken, Mr. Tabet and his co-defendants caused the counterclaims to be dismissed without prejudice. Soon thereafter, Mr. Tabet filed an action, again asserting essentially his entitlement to three million dollars under the Note and Trust Deed, in Fairfax County, Virginia. Horseback moved to quash and dismiss the action for lack of jurisdiction. Just before the scheduled hearing on Horseback's motion to quash and dismiss, Mr. Tabet and his co-plaintiffs again dismissed their claims without prejudice. [4]

Horseback then filed this action against Mr. Tabet, invoking Colo. Rev. Stat. Ann. § 38-35-204, which provides in part:

(1) Any person whose real or personal property is affected by a recorded or filed lien or document that the person believes is a spurious lien or spurious document may petition . . . the federal district court in Colorado for an order to show cause why the lien or document should not be declared invalid.
. . . .
(2) If, following the hearing on the order to show cause, the court determines that the lien or document is a spurious lien or spurious document, the court shall make findings of fact and enter an order and decree declaring the spurious lien or spurious document and any related notice of lis pendens invalid, releasing the recorded or filed spurious lien or spurious document, and entering a monetary judgment in the amount of the petitioner's costs, including reasonable attorney fees, against any respondent and in favor of the petitioner.

---

[4]Apparently, the dismissal in the Virginia case occurred after the district court in this case ruled against Mr. Tabet.

Id. A "spurious document" is defined as "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." Colo. Rev. Stat. Ann. § 38-35-201(3). A "spurious lien" is defined as "a purported lien or claim of lien that . . . [i]s not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber." Colo. Rev. Stat. Ann. § 38-35-201(4)(b).

Horseback sought a declaration that the Trust Deed and the Notice of Lis Pendens were spurious and invalid and further sought a decree releasing them both. The district court conducted a two-day hearing, during which it listened to testimony from Mr. Tabet, Jean Agbey and others, and reviewed various affidavits and documents. It then concluded that no credible oral or documentary evidence established that any funds were ever dispersed under the Note, which the Trust Deed secured, or that Mr. Tabet in fact is the current holder of the Note and Trust Deed. The court stated in part:

> This case turns on credibility . . . .
>
>         . . . As to the issue of funding, it is argued that both Jean Agbey and Mr. Tabet testified and that the testimony is undisputed that $3 million or more were advanced and loaned under the terms of the note. Mr. Agbey, Jean Agbey, attempted to testify to this effect, but I determined and am satisfied that he had no proper evidentiary foundation or basis upon which to state under oath as a matter of fact that monies were advanced under the terms of this promissory note secured by the deed of trust , with the possible exception of the settlement amount on Exhibit . . . 7 of $118,469.68. . . .

-6-

The evidence on cross-examination also, both Mr. Agbey, certainly Mr. Tabet, reflected that    Jean Agbey and Maroun Tabet are closely associated, and this close association in my view affects Jean Agbey's credibility   .

The only evidence of source of funds asserted to be advanced subject to the promissory note secured by the deed of trust comes really from Mr. Tabet, who has not been consistent in his recitation of the source of these fund[s]   .

Tr. of Oral Ruling, Appellant's App. at 133-34 (emphasis added).    [5]    The district court went on to find:

There has been no evidence other than Mr. Tabet's testimony to document any transfer of funds from any source tied directly to the promissory note and deed of trust.

There was admitted Exhibit A, which reflects that Mr. Tabet gave Mr. Sweetbaum, his then counsel, certain documents evidencing wire transfers which were purported in this letter to be monies transferred from Mr. Fahoum on behalf of Mr. Tabet for investment in the Aspen properties which constituted loans made subject to the promissory note and deed of trust.    But the underlying documents which Mr. Tabet, according to Mr. Sweetbaum, gave him are wholly unreliable and reflect alterations, if not outright forgeries     .

Id. at 134. (emphasis added).  The court further stated:

_____

[5]After apparently reciting differing and at times inconsistent versions of the source of the three million dollar obligation memorialized in the Note and Trust Deed, Mr. Tabet settled upon the following:  in the 1980s, when he was the president of a Lebanese bank, Mr. Tabet guaranteed a $30 million loan to a Mr. Daher Al-Fahoum.  Mr. Tabet knew that the guarantee was illegal under Lebanese law because the $30 million loan exceeded the bank's assets, but Mr. Tabet signed the guarantee anyway because Mr. Al-Fahoum promised to pay him four million dollars.  Mr. Tabet claims Mr. Al-Fahoum eventually paid off this debt by investing in the Aspen Properties on Mr. Tabet's behalf, thereby providing funding for the Note and Trust Deed.

So in order for me to find that there were any funds advanced subject to the terms and conditions of the note and deed of trust, I would have to determine that Mr. Tabet is credible, because absent his testimony there is no evidence whatsoever that any monies were advanced under the terms of the note and the deed of trust by defendant, or anyone else for that matter, with the exception . . . of the settlement sheet signed by Mr. Marciano found at Exhibit 6.

Id. at 135-36 (emphasis added). The court then found that the settlement sheet, signed by the president of Horseback when it purchased the Aspen Properties, did not sufficiently memorialize any actual indebtedness under the Note:

Read on its face it says that there's a $3 million second mortgage outstanding that the buyer, Horseback, agrees to assume and pay. And when one looks at the contract [of sale], one finds reference to that second deed of trust with reference to final determination of any amount due under that second deed of trust prior to closing. . . .

I don't take it as a binding admission, but it certainly has probative value. It has to be read together with the deed of trust note, the deed of trust itself, as well as the contract with Horseback . . . .

I am persuaded and convinced that the effect of [the settlement sheet] is to acknowledge . . . that to the extent there is any liability on that note, that note was to be assumed and was assumed to the extent of that liability, if any.

Id. at 136 (emphasis added). The district court then summarized the entire problem with Mr. Tabet's claims:

The problem here is that there is absolutely no evidence, that is other than the settlement sheet, credible in any respect or satisfying in any respect that any person, Mr. Tabet or anyone else, advanced any monies under this promissory note, so that the promissory note stands naked. And there being no indebtedness, the deed of trust

secures nothing.  A deed of trust cannot secure an unfunded, naked
note upon which there is no liability   .

Id. at 136-37 (emphasis added).

Aside from the lack of credible evidence that any monies were advanced under the Note, the court also determined that there was no credible evidence that Mr. Tabet is the current holder of the Note and Trust Deed, as he claims.  Indeed, the court acknowledged:

> the note itself reflects that it is payable to the order of Simon Y. Agbey, trustee.  There is an unresolved issue, not resolved by the evidence in this case, as to who is the true holder of the note and deed of trust or who was the true beneficiary of the note and deed of trust.  Mr. Tabet claims he is.  Yolanda van den Herick, wife of Mr. Hadid, claims that she is.  I don't know where the originals of these documents are, who possesses them.

Id. at 137.  The court also addressed the endorsement of the Note and assignment of the Trust Deed to Mr. Tabet, both purportedly signed by Jean Agbey as attorney in fact for Simon Agbey, who never appeared in this litigation.  As the court observed, the validity of those instruments depends, in turn, on the validity of the power of attorney purporting to confer on Jean Agbey the power to act for Simon Agbey.  After discussing conflicting affidavits regarding Simon Agbey, and noting possible discrepancies in signatures, the court concluded:

> Given the severe question of the credibility of Mr. Tabet and Jean Agbey,  I have serious question about the validity, authenticity of the power of attorney    . . .  I don't trust it  .  I don't believe it  . Without that, the endorsement of the note and the assignment of the deed of trust have no worth in this hearing.  Without them, Mr. Tabet

has failed to show that he has a claim of right as holder or beneficiary under the note and deed of trust.

Id. at 138-39 (emphasis added). The court concluded its oral ruling with the following:

> In short, I find and conclude as a matter of fact and law that Mr. Tabet has no right, title and interest in the promissory note and deed of trust made the subject of this action.
>
> I further find and conclude as a matter of fact and law that there was never any monies loaned or advanced subject to the terms and conditions of the promissory note and deed of trust made the subject matter of this action such that they stand as naked and represent no obligation to repay. There being no obligation to repay the note, the deed of trust does not constitute a genuine lien against the property. It is, therefore, under the provisions of 38-35-204 spurious.

Id. at 142-43.

The district court issued its written order three days later, declaring the Trust Deed spurious and invalid; the Lis Pendens referring to the Pitkin County Action invalid; and declaring both instruments released, so as to "have no further force or effect as to the" Aspen Properties. Final Order and Decree, Appellant's App. at 149. Mr. Tabet filed a Rule 60(b) motion for relief from the judgment and for a stay, which the district court denied. Mr. Tabet appeals both the entry

-10-

of the Final Order and the denial of his Rule 60(b) motion. The two appeals have been consolidated for disposition in this court. [6]

## DISCUSSION

In a diversity case like this, we review de novo the district court's determinations of law, while "[u]nderlying factual determinations are reviewed for clear error." Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency, 174 F.3d 1115, 1118 (10th Cir. 1999). Further, "we will not substitute our judgment of credibility for that of the trial court." United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994). We review the denial of a Rule 60(b) motion for relief from the judgment for an abuse of discretion. See Yapp v. Excel Corp., 186 F.3d 1222, 1230 (10th Cir. 1999).

---

[6]We easily dispose of Mr. Tabet's argument that there is no federal subject-matter jurisdiction in this case because the amount in controversy in this case does not exceed the jurisdictional amount of $75,000. Mr. Tabet argues that, because the Trust Deed was released before Horseback filed its petition in this case, Horseback's claim for its release in this case has no value. This ignores the fact that Mr. Tabet is challenging the Release as fraudulent, and he continues to assert that the Trust Deed memorializes a three million dollar debt Horseback owes him. Thus, we cannot say that it "appear[s] to a legal certainty" that the amount in controversy is less than the jurisdictional amount. State Farm Mut. Auto. Ins. Co. v. Narvaez, 149 F.3d 1269, 1271 (10th Cir. 1998) (quoting Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353-54 (1961) (holding that jurisdictional amount met when plaintiff sued in federal court asserting that it owed nothing to defendant who claimed entitlement to an amount in excess of jurisdictional amount).

In concluding that no reliable evidence demonstrated that any monies had ever been dispersed under the Note, that the Trust Deed securing the Note therefore secured nothing, and that no reliable evidence established who was the proper holder of the Note and Trust Deed, the district court made a number of credibility determinations. The court concluded that neither Mr. Tabet nor Jean Agbey were credible, believable witnesses. It further determined that the documentary evidence upon which Mr. Tabet relied to establish the existence of his claim to three million dollars from Horseback was not probative or reliable. Mr. Tabet does not challenge these determinations in this appeal. Rather, he makes two legal arguments, neither of which is persuasive. We address each in turn.

Mr. Tabet first argues that, under the Colorado statute at issue in this case, a notice of lis pendens cannot be a "spurious lien" or "spurious document." Colo. Rev. Stat. Ann. § 38-35-204. This argument is beside the point. [7] The statute permits the court to declare "the spurious lien or spurious document <u>and any related notice of lis pendens invalid</u>." Colo. Rev. Stat. Ann. § 38-35-204(2) (emphasis added). As the district court's written order made clear, that is

---

[7]In any event, a recent Colorado Court of Appeals decision implies that a notice of lis pendens can be a "spurious document" under Colo. Rev. Stat. Ann. § 38-35-204. See Westar Holdings Partnership v. Reece, 1999 WL 976653 (Colo. App. Oct. 28, 1999).

precisely what the court did in this case. It declared the Trust Deed "spurious" and "invalid;" it declared the Lis Pendens "invalid;" and it declared both instruments released. [8] While the court did not explain how the Notice of Lis Pendens, referencing the Pitkin County Action, was "related" to the Trust Deed, we have little trouble concluding that the court correctly so held. The Pitkin County Action involved an attack on the validity of the Release of the Trust Deed. When the district court declared spurious and invalid the Trust Deed, the validity of the Release was rendered moot. Thus, the Notice of Lis Pendens is related to the Trust Deed, and is equally "invalid."

Second, Mr. Tabet argues that the Trust Deed could not be released because it was "not on record or file at the time this action was commenced." Appellant's Br. at 15. He asserts that the Release, which he challenges as fraudulent in the Pitkin County Action, had the effect of completely eradicating the Trust Deed, making it not susceptible to legal challenge. We disagree. The fact that a release has been filed may obviously affect the legal import of a recorded instrument so released, but Mr. Tabet cites us to no authority, nor are we aware of any, that states that such a release causes the instrument to completely evaporate so that it

---

[8]The district court's oral ruling less precisely tracked the statute. Indeed, it referred to the Trust Deed and the lis pendens as "spurious liens." We need not pursue whether, in fact, a notice of lis pendens could be a "spurious lien" because the district court's written order made it clear that it declared the Notice of Lis Pendens invalid, as the statute expressly contemplates.

is beyond all legal process.  Indeed, Mr. Tabet does not argue that, if he had prevailed in his challenge to the Release in the Pitkin County Action, he would have had to record a new Trust Deed against the Aspen Properties.

Quite simply, Mr. Tabet's own conduct undermines the validity of his arguments here.  We will not permit Mr. Tabet to simultaneously argue in the Pitkin County Action that the Release is fraudulent and void, yet argue to this court that it effectively insulates the Trust Deed from any attack.  Moreover, if Mr. Tabet prevails in his Pitkin County Action, the very issue before us now will presumably be squarely presented again.

In sum, we reject Mr. Tabet's argument that the Release rendered the Trust Deed beyond the reach of Colo. Rev. Stat. Ann. § 38-35-204.  We therefore AFFIRM the order of the district court and find no abuse of discretion in its denial of Mr. Tabet's Rule 60(b) motion.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge