**WESTAR HOLDINGS PARTNERSHIP, a Colorado partnership, Plaintiff–Appellant,**

v.

**Fred D. REECE, an individual, Defendant–Appellee.**

No. 98CA1093.

Colorado Court of Appeals, Div.II.

Oct. 28, 1999.

Dufford & Brown, P.C., S. Kirk Ingebret-sen, Denver, Colorado, for Plaintiff–Appellant.

E. Hil Margolin, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge RULAND.

Plaintiff, Westar Holdings Partnership, appeals from the judgment of the trial court determining that the notice of *lis pendens* filed by defendant, Fred D. Reece, was not a "spurious document" for purposes of § 38–35–204, C.R.S.1999. Plaintiff also appeals the award of attorney fees to defendant. We reverse and remand the case for further proceedings.

Plaintiff entered into a contract to sell real property to defendant. However, defendant

failed to tender the down payment required under the contract, and the sale did not close.

Plaintiff filed a complaint against defendant alleging breach of contract. Defendant answered and asserted three counterclaims including one for specific performance. In connection with this claim, defendant filed a notice of *lis pendens* against the property.

In response, plaintiff commenced a separate action against defendant pursuant to § 38–35–204 by filing a petition for order to show cause why the notice of *lis pendens* should not be declared invalid as a spurious document. Following a two-day evidentiary hearing, the trial court concluded that the notice of *lis pendens* was not a spurious document because defendant's specific performance counterclaim affected title to real property and because a rational argument could be made to support the claim. Specifically, defendant alleged that plaintiff had breached certain obligations in the contract and that a closing had never been scheduled.

The trial court limited its review, however, to an analysis of the pleaded allegations of the counterclaim and legal arguments in support of that claim. It made no findings of fact relative to the evidence presented by the parties.

Based upon this review, the trial court discharged the order to show cause, and awarded attorney fees to defendant pursuant to the statute. The court then consolidated plaintiff's statutory proceeding with the original suit pending between the parties.

Later, the court granted plaintiff's motion for summary judgment on defendant's counterclaim for specific performance and dismissed that claim. The trial court then certified its ruling on plaintiff's claim under § 38–25–204 as a final judgment pursuant to C.R.C.P. 54(b). This appeal followed.

## I.

■ Plaintiff contends that, in determining whether the notice of *lis pendens* was a "spurious document" under § 38–35–204, the trial court erred by not considering the merits of its petition based on the evidence presented at the hearing. In support of the judgment, however, defendant contends that

a § 38–35–204 hearing is analogous to a hearing under C.R.C.P. 105(f), and that a determination must be made based upon the pleadings only. We agree with plaintiff.

Section 38–35–204 provides a mechanism for challenging any "spurious document" filed against real property. A "spurious document" is defined as "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." Section 38–35–201(3), C.R.S.1999.

■ A similar statute prohibiting recordation of invalid liens contains language identical to that used to define "spurious documents" in § 38–35–201. *See* § 38–35–109(3), C.R.S.1999. Relative to that statute, a division of this court held that a "groundless document" was one for which a proponent can advance no rational argument based on evidence or the law to support the claim of a lien. *Harris v. Hanson*, 821 P.2d 821 (Colo. App.1991). We perceive no reason why the same definition should not be applicable to § 38–35–204, and thus, we adopt it here as did the trial court.

Contrary to defendant's contention, however, we conclude that the court erred in limiting its review to the pleaded allegations and legal argument.

Section 38–35–204(3), C.R.S.1999, provides:

If, following the *hearing* on the order to show cause, the court determines that the lien or document is not a spurious lien or spurious document, the court shall issue an order so finding and enter a monetary judgment in the amount of any respondent's costs, including reasonable attorney fees, against any petitioner .... (emphasis supplied)

The term "hearing" is not defined. Therefore, we must interpret the statute according to established principles of statutory construction.

■ Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To determine that intent, we first look to the plain language of the statute and construe the words according to their plain and ordinary

meaning. *People v. District Court*, 713 P.2d 918 (Colo.1986).

■ However, if the meaning of the words used is unclear or ambiguous, we may look to legislative history and other rules of statutory construction for guidance in ascertaining the legislative intent. *See Martin v. Montezuma–Cortez School District RE–1*, 841 P.2d 237 (Colo.1992).

■ Finally, as pertinent here, in interpreting the statute we must presume that the General Assembly intended a just and reasonable result. *State Engineer v. Castle Meadows, Inc.*, 856 P.2d 496 (Colo.1993).

In *Brown v. Brown*, 161 Colo. 409, 422 P.2d 634 (1967), our supreme court adopted a definition of "hearing" in interpreting a custody statute. The court held that use of this term included both the privilege to be present when a case is being considered and the right to present and support one's contentions by *evidence* and argument. Based upon *Brown*, this court construed the term "hearing" to include the introduction of evidence in a statutory proceeding to determine whether a district attorney must prosecute a particular suspect. *Moody v. Larsen*, 802 P.2d 1169 (Colo.App.1990).

We perceive no reason why a similar interpretation should not apply here. Further, even if we assume that the term "hearing" is somehow ambiguous, we find additional support for this interpretation in the legislative history of the statute.

Hearings on the proposed statute reveal that the purpose of the Act was to protect individuals from those who use groundless claims to cloud title to real property as a form of protest or harassment. Specifically, the bill was introduced to provide a mechanism to "test the veracity" of such liens.

During the hearings, Representative Tool specifically described the hearing provision as a "fail-safe mechanism" because there was "no chance" a legitimate lien could be discharged through use of a show cause hearing. Similar references to the hearing as a "fail-safe mechanism" for removing invalid liens were made throughout the proceedings. *See* Hearing on H.B. 1143 before the House

Committee on Judiciary, 61st General Assembly, First Session (January 23, 1997).

Additional testimony suggested that a hearing on the merits was contemplated when questions were asked concerning trial court congestion. That testimony indicated that a trial court, faced with a busy docket, could continue a show cause hearing if a lengthy trial were required. *See* Hearing on H.B. 1143 before the Senate Committee on Judiciary, 61st General Assembly, First Session (February 17, 1997). A hearing without presentation of evidence concerning the validity of the recorded document, however, falls short of being the "fail-safe mechanism" envisioned by the General Assembly.

Furthermore, interpreting the term "hearing" to foreclose consideration of evidence concerning the validity of a document would not effectuate a just or reasonable result. If the result of a petition were to be dictated simply by the skill of the pleader and legal argument, then even a petition having a sound substantive basis could result in the petitioner being ordered to pay the other party's attorney fees.

Likewise, this interpretation could result in instances where a court makes a preliminary determination that documents are not spurious and awards attorney fees, only to determine later on the merits that the documents were in fact spurious. To avoid such results, a hearing on the merits of the underlying claim is appropriate.

In reaching this conclusion, we recognize that § 38–35–203(2), C.R.S.1999, expressly requires that any notice of *lis pendens* filed under the statute comply with C.R.C.P. 105(f). However, C.R.C.P. 105(f) no longer contains the content requirements for a notice of *lis pendens*. *See* C.R.C.P. 105 (Committee Comment). Instead, it prescribes the procedure for challenging a notice of *lis pendens* in the *same* action in which a claim is made. Thus, the rule is of no assistance in resolving the issue before us.

Indeed, we note that C.R.C.P. 105.1 was adopted by our supreme court following enactment of the statute and after entry of the judgment in this case to provide a procedural mechanism for a § 38–25–204 proceeding.

The rule expressly gives courts discretion to continue a show cause hearing for further proceedings and trial. *See* C.R.C.P. 105.1(d).

Accordingly, we hold that a hearing pursuant to § 38–35–204 may not be limited to the pleaded allegations and legal argument unless the parties agree to a waiver of the right to present and have evidence· considered. Therefore, the award of attorney fees to defendant here was premature.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge MARQUEZ and Judge TURSI* concur.