The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 20, 2019

## 2019COA94

**No. 18CA1990, *Baum v. Industrial Claim Appeals Office* — Labor and Industry — Workers' Compensation — Benefits — Wage Continuation Plans**

In this workers compensation case, a division of the court of appeals interprets the phrase "other similar benefits" used in connection with "earned vacation leave" and "sick leave" in section 8-42-124(2)(a), C.R.S. 2018, of the of the Workers' Compensation Act (Act). The division concludes that earned benefits that an employee can exercise only in the event that he or she suffers a work-related injury and that cannot otherwise be converted to any other use or cashed out at separation do not fall within the scope of "other similar benefits" as used in section 8-42-124(2)(a).

Based on this interpretation of the statute and the rejection of the claimant's constitutional challenges to the Act, the division affirms the order of the Industrial Claim Appeals Office.

COLORADO COURT OF APPEALS        **2019COA94**

Court of Appeals No. 18CA1990
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-961-870

Jason Baum,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and United Airlines,

Respondents.

ORDER AFFIRMED

Division VI
Opinion by JUDGE WELLING
Freyre and Márquez*, JJ., concur

Announced June 20, 2019

Turner, Roepke & Mueller, LLC, Robert W. Turner, Greenwood Village, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema & Lyon, P.C., Alana S. McKenna, M. Holly Colvin Herring, Denver, Colorado, for Respondent United Airlines


*Sitting by assignment of the Chief Judge under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Claimant, Jason Baum, appeals the final order of the Industrial Claims Appeal Office affirming the summary judgment of the director of the Division of Workers' Compensation in favor of self-insured employer, United Airlines (UAL).

¶ 2    This workers' compensation action calls on us to clarify the boundary between where an employer can and cannot take credit for having an approved wage continuation plan under section 8-42-124, C.R.S. 2018.  Here, UAL paid Baum full pay under its wage continuation plan after he sustained an admitted work-related injury, but UAL also claimed a credit on its final admission of liability (FAL) for the comparable temporary total disability (TTD) benefits it would have otherwise been statutorily required to pay Baum.  This credit increased Baum's reported TTD benefits, pushing them over the statutory cap set by section 8-42-107.5, C.R.S. 2018.  Baum challenged UAL's right to take the credit.  But both the director of the Division of Workers' Compensation (Division) and the Industrial Claim Appeals Office (Panel) held that UAL acted within its rights in taking the credit.  Because we, too, conclude that UAL was entitled to take the credit, we affirm.

1

## I. Background Facts

¶ 3    Baum sustained admitted, work-related injuries on September 7, 2014. His injuries caused him to be temporarily totally disabled and off work until July 2016. He was placed at maximum medical improvement (MMI) with a permanent impairment rating of 2% of the whole person on September 25, 2016.

¶ 4    For the first nine months after his injury — until June 17, 2015 — UAL paid Baum his full salary under its wage continuation plan. After Baum's earned benefits under the wage continuation plan ran out in June 2015, UAL paid him TTD benefits pursuant to section 8-42-105, C.R.S. 2018, until July 29, 2016. Unlike the benefits Baum received under UAL's wage continuation plan, the TTD benefits he received from June 2015 to July 2016 were paid at the lower statutorily mandated rate of two-thirds of Baum's average weekly wage. *See* § 8-42-105.

¶ 5    In the FAL it filed after Baum reached MMI, UAL calculated that it had overpaid Baum TTD benefits by $1459.83.[1] It also took

---

[1] The Director correctly determined that UAL miscalculated the overpayment by $1.16. The correct overpayment amount is $1458.67.

the position that Baum was not entitled to any compensation for his 2% whole person permanent impairment because the calculated TTD payments exceeded the statutory cap set by section 8-42-107.5 for combined TTD and permanent partial disability (PPD) benefits. UAL calculated this sum by adding the amount it had paid Baum in TTD benefits from June 2015 to July 2016 ($48,944.85) and the amount it *would have paid* Baum in TTD benefits from September 2014 to June 2015 ($33,949.49) had it not been paying him his full salary during those nine months under its wage continuation plan. In other words, UAL took credit on the FAL for TTD payments it would have made but for its wage continuation plan. The calculated TTD benefits totaled $82,894.34, which exceeds the applicable statutory cap of $81,435.67 by $1458.67.

¶ 6     Baum objected to UAL's claim of an overpayment, imposition of the statutory cap, and claimed credit for TTD benefits he did not receive. He filed an application for hearing, seeking TTD from the date of his injury until June 17, 2015, the day he exhausted his wage continuation benefits, as well as full payment of the PPD benefits he would otherwise receive for his 2% whole person impairment.

¶ 7     UAL filed a motion for summary judgment, arguing that its wage continuation plan was valid and had been approved by the director and in constant operation since 1973.  It also argued that because Baum received his full pay under the plan and the plan "did not impair . . . [his] earned sick or vacation benefits," it was expressly entitled to claim a TTD credit by section 8-42-124(2)(a).

¶ 8     The director of the Division agreed.  He rejected Baum's contention that benefits paid under the wage continuation plan were similar to vacation or sick leave.  Instead, the director concluded that because benefits under the wage continuation plan could not be accessed at an employee's discretion or for a purpose other than compensation for a work-related injury — a UAL employee can tap benefits earned under the wage continuation plan "only when they have suffered an injury 'covered by the applicable state workers' compensation law'" — the benefits were *not* similar to vacation or sick leave.  Therefore, their accrual and exercise did not bar UAL from taking the claimed TTD credit.  The director further concluded that because UAL properly claimed the credit, Baum's benefits exceeded the statutory cap and he was not entitled to

receive any PPD benefits or TTD benefits for the period September 8, 2014, to June 17, 2015.

¶ 9     The Panel affirmed on review. It, too, rejected Baum's argument that wage continuation benefits accrued under UAL's plan are "similar" to vacation or sick leave. Because it concluded that wage continuation benefits are different from vacation and sick leave, UAL properly took the credit for TTD benefits and Baum was not entitled to any additional benefits.

## II. Wage Continuation Plans

¶ 10     To give context to how we address Baum's contentions, a brief explanation of wage continuation plans authorized by section 8-42-124 of the Workers' Compensation Act (Act) is helpful. Although most injured workers receive TTD benefits under the Act, it authorizes — and to some extent, incentivizes — employers to adopt a plan that pays injured workers *more* benefits than they would have received in TTD benefits. In this regard, the Act states as follows:

> Any employer . . . who, by separate agreement, working agreement, contract of hire, or any other procedure, continues to pay a sum in excess of the [TTD] benefits prescribed by articles 40 to 47 of this title to any employee

temporarily disabled as a result of any injury arising out of and in the course of such employee's employment *and has not charged the employee with any earned vacation leave, sick leave, or other similar benefits* shall be reimbursed if insured by an insurance carrier or *shall take credit if self-insured to the extent of all moneys that such employee may be eligible to receive as compensation or benefits for temporary partial or temporary total disability* under the provisions of said articles, subject to the approval of the director.

§ 8-42-124(2)(a) (emphasis added). As pertinent here, the provision expressly permits an employer to establish a plan that pays an injured worker unable to work because of a temporarily disabling work injury more than the worker would have received in TTD benefits under section 8-42-105.

¶ 11 The Act incentivizes employers to create such plans by permitting the participating self-insured employers to "take credit" on their admission forms for the equivalent amount the employer would have paid in TTD or temporary partial disability benefits if not for the employer's wage continuation plan. § 8-42-124(2)(a). Insured participating employers are entitled to a reimbursement from the insurer of the equivalent TTD amount. *Id.* However, if the employer "charge[s]" the injured worker "with any earned vacation

6

leave, sick leave, *or other similar benefits*" during the time of disability — in other words, if the employer makes the worker use vacation time or sick time while unable to work because of the work-related injury — then the employer *cannot* take advantage of the credit on its admission form or seek reimbursement from the insurer. *See id.*

¶ 12   With this framework in mind, we turn first to Baum's constitutional challenges to section 8-42-124, followed by the statutory interpretation issue previewed at the start of this opinion.

### III. Constitutional Challenges

¶ 13   Baum first argues that section 8-42-124 is unconstitutional "on its face and as applied" because the plan was approved by the director without the opportunity for injured workers to challenge the plan in court. He contends that the lack of "appellate review" denied him his property interest in workers' compensation benefits without due process. He further contends that the absence of appellate review of approved wage continuation plans renders the statute unconstitutional on its face and violates the separation of powers in Article 3 of the Colorado Constitution. We are not persuaded by these arguments.

## A. Law Governing Due Process Analysis and Standard of Review

¶ 14 "The fundamental requisites of due process are notice and the opportunity to be heard by an impartial tribunal." *Wecker v. TBL Excavating, Inc.*, 908 P.2d 1186, 1188 (Colo. App. 1995). "The essence of procedural due process is fundamental fairness." *Avalanche Indus., Inc. v. Indus. Claim Appeals Office*, 166 P.3d 147, 150 (Colo. App. 2007), *aff'd sub nom. Avalanche Indus., Inc. v. Clark*, 198 P.3d 589 (Colo. 2008); *see also Kuhndog, Inc. v. Indus. Claim Appeals Office*, 207 P.3d 949, 950 (Colo. App. 2009) (Due process "requires fundamental fairness in procedure.").

¶ 15 A claimant asserting that a statute is unconstitutional must demonstrate that the statute "is unconstitutional beyond a reasonable doubt." *Peregoy v. Indus. Claim Appeals Office*, 87 P.3d 261, 265 (Colo. App. 2004). And, when analyzing the statute's constitutionality, we must begin with the presumption "that the statute is valid." *Calvert v. Indus. Claim Appeals Office*, 155 P.3d 474, 477 (Colo. App. 2006).

¶ 16 "This court has initial jurisdiction to address constitutional challenges to the [Act]." *Zerba v. Dillon Cos.*, 2012 COA 78, ¶ 8.

## B. Baum Cannot Establish That He Was Deprived of a Protected Interest Without Due Process

¶ 17 To prove a due process claim, a claimant must first meet the threshold burden of establishing a deprivation of a protected interest:

> "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" It is necessary to consider whether a property right has been identified, whether government action with respect to that property right amounted to a deprivation, and whether the deprivation, if one is found, occurred without due process of law.

*Whatley v. Summit Cty. Bd. of Cty. Comm'rs*, 77 P.3d 793, 798 (Colo. App. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).

¶ 18 Baum cannot meet this burden. He asserts that he was deprived of a property interest without due process when the director approved UAL's wage continuation plan. We agree with Baum that "once an admission of liability was entered" he had a vested property right under the Act, albeit not a fundamental right. *See Dillard v. Indus. Claim Appeals Office,* 134 P.3d 407, 413 (Colo. 2006) ("Access to Workers' Compensation benefits is not a

9

fundamental right."); *Whiteside v. Smith*, 67 P.3d 1240, 1247 (Colo. 2003) ("The substantive right to workers' compensation is a constitutionally protected property interest.").

¶ 19 Baum contends, though, that he was deprived of his right to benefits without due process when the director "establish[ed] and approve[d] [UAL's] wage continuation plan without appellate review." The fatal flaw in Baum's argument, however, is that it fails to account for the fact that UAL's plan was adopted and approved long before he sustained any injury. The record reflects that the director approved the plan in 2006 and renewed it in 2017. The 2017 approval letter the director sent to UAL stated, "Our records indicate that your plan was originally effective September 14, 1973 and was updated July 21, 2006." Importantly, when UAL's plan was approved in 1973 or even in 2006, Baum *did not have a property right*. This is so because he was not injured, and UAL did not admit liability, until September 2014. And the record indicates that the 2006 approval was simply continued in 2017 because any changes to the plan were minimal. Consequently, Baum cannot meet the threshold test of being deprived of a property interest

without due process when the plan was approved because he had no such interest at that time.  *See Whatley*, 77 P.3d at 798.

¶ 20    Baum attempts to sidestep this issue by highlighting distinctions between the plan approved in 2006 and that approved in 2017, implying that additional measures, up to and including a hearing, should have occurred in 2017.  The wage continuation plan in place in 2014 was part of the negotiated 2013-2016 Fleet Services Agreement reached between UAL and the International Association of Machinists and Aerospace Workers (IAMAW).  Representatives of both UAL and the IAMAW signed the agreement, which went into effect November 1, 2013.  However, according to the affidavit of the assistant general chairman of the IAMAW, the only substantial difference between the agreement in effect in 2006 and the 2013-2016 Fleet Services Agreement is that the applicable benefits under the latter are deducted at the rate of forty hours per week, rather than at the rate of thirteen and one-third hours per week as they were in 2006.  According to the assistant general chairman, the change was made because previously benefits under the wage continuation plan — called occupational injury leave or

OIL[2] — supplemented TTD benefits to make an injured worker's salary whole. Under the 2013 agreement, "the occupational bank is used in place of payment of any TTD benefits."

¶ 21 Baum contends that this change — which inarguably depletes his bank of OIL benefits at a faster rate than before — deprived him of his protected property interest because neither he nor any other worker was given an opportunity to challenge the plan and its approval in court. But, as UAL points out, the change was not imposed by UAL alone. Rather, it was a negotiated agreement approved by representatives of the IAMAW. Thus, through his union representatives, Baum had a seat at the table at which the agreement modifying the plan was negotiated.

¶ 22 As pertinent to Baum's due process challenge, though, the plan's adoption did not necessitate appellate or judicial review because it did not create any protected property rights; instead, the wage continuation plan simply establishes a means for UAL to administer benefits to its injured employees — and to do so at a

---

[2] OIL is not a term of art under the Act. Instead, it is simply the nomenclature used by UAL to describe the benefits it provides its employees under its wage continuation plan.

12

rate greater than TTD benefits required to be paid under the Act. Conversely, adoption of the 2013-2016 Fleet Services Agreement could not deprive Baum of any property right because his property right in the benefit did not arise until his work-related injury — which occurred after UAL and the IAMAW adopted the agreement.

¶ 23    Accordingly, we reject Baum's contention that he was deprived of a property right without due process. *See id.*

## C.  Baum Cannot Establish a Violation of the Separation of Powers Doctrine

¶ 24    Baum's separation of powers challenge also fails.  He argues that the legislature violated the separation of powers doctrine when it approved section 8-42-124 without including a process for judicial review of wage continuation plans.  We disagree.

¶ 25    As Baum acknowledges, "the Act has been previously subjected to separation of powers scrutiny by the courts."  No court has ever determined that the Act violates the doctrine.  To the contrary, each time the Act has been challenged for allegedly violating the separation of powers doctrine, no constitutional violation was found.  In each case, a division of this court concluded that appellate review of workers' compensation claims

13

ensures that any errors committed by administrative law judges (ALJ) or the Panel can be corrected by a court. *See Sanchez v. Indus. Claim Appeals Office*, 2017 COA 71, ¶¶ 11-12; *Dee Enters. v. Indus. Claim Appeals Office*, 89 P.3d 430, 433 (Colo. App. 2003); *MGM Supply Co. v. Indus. Claim Appeals Office*, 62 P.3d 1001, 1004 (Colo. App. 2002).

¶ 26　　Even so, Baum contends that no court has considered whether the lack of judicial review for approval of wage continuation plans under section 8-42-124 violates the separation of powers. "Article III of the Colorado Constitution prohibits one branch of government from exercising powers that the constitution vests in another branch." *Dee Enters.*, 89 P.3d at 433. "The separation of powers doctrine does not require a complete division of authority among the three branches, however, and the powers exercised by different branches of government necessarily overlap." *Id.*

¶ 27　　The separation of powers doctrine does not, as Baum contends, guarantee that the judicial branch will be granted oversight over every action taken by any governmental entity in the state. Rather, it prohibits one governmental branch from usurping or exercising powers vested in another branch. *Id.*

¶ 28    In adopting section 8-24-124, the legislature did not grant itself the power to approve wage continuation plans.  Instead, it vested that authority in another branch — the executive branch — by making wage continuation plans subject to the director's approval.  § 8-42-124(2)(a).  The plan at issue here, with minor changes, has been continuously approved by the director since 1973.

¶ 29    And, contrary to Baum's premise, the judicial branch has not been excluded from reviewing these plans or section 8-42-124.  We are, in fact, reviewing aspects of UAL's plan in this very case, and aspects of other wage continuation plans have been reviewed extensively by previous divisions of this court.  *See City & Cty. of Denver v. Indus. Claim Appeals Office*, 107 P.3d 1019, 1022 (Colo. App. 2004) (permitting employers who provide wage continuation plans to take credit for TTD payments by reinstating earned vacation or sick benefits after determining that an injury is compensable under the Act); *Pub. Serv. Co. v. Johnson,* 789 P.2d 487, 489 (Colo. App. 1990) (rejecting the employer's contention that prohibiting employers who charge injured workers with earned sick or vacation leave while the worker is disabled from taking a TTD

credit results in double compensation). Such subsequent court review of an agency action is appropriate because any review conducted earlier in the process — before property rights arise — would violate the prohibition against courts considering a matter absent an actual case or controversy. *See Colo. Gen. Assembly v. Lamm*, 700 P.2d 508, 515-16 (Colo. 1985) ("Whether a particular plaintiff has standing to invoke the jurisdiction of the courts is a preliminary inquiry designed to ensure that the judicial power is exercised only in the context of a case or controversy.").

¶ 30    For these reasons, we conclude that the approval of section 8-42-124 did not violate the separation of powers doctrine.

## IV.  Statutory Interpretation

¶ 31    Baum next contends that the Panel erroneously affirmed the director's grant of summary judgment to UAL.  He argues that the director misinterpreted section 8-42-124 when he concluded that UAL's wage continuation program benefits did not fall under the statute's residual provision of "other similar benefits."  *See* § 8-42-124(2)(a).  As explained above, section 8-42-124(2)(a) entitles UAL to take TTD credit for the period it paid Baum OIL under its wage continuation plan, so long as it did not charge Baum for vacation

16

leave, sick leave, "or other similar benefits" during the period he was unable to work.

¶ 32     Baum argues that the similarities between OIL benefits, on the one hand, and sick and vacation leave, on the other hand, render the OIL benefits sufficiently similar to land them under the canopy of "other similar benefits." He notes that like vacation and sick leave, OIL benefits under UAL's wage continuation plan are earned and accrue at the rate of eight hours per month — coincidentally the same rate that Baum accrues sick leave. Also, like sick leave, OIL is used up at the rate of forty hours per week when an injured worker is unable to work. Finally, Baum points out that if a worker runs out of OIL, sick leave can be converted to OIL, and vacation leave can be converted to sick leave. In other words, a worker short on OIL can — but is not required to — dip into earned benefits from the sick and vacation banks to extend OIL. Listing these similarities, Baum asks, then, "are the benefits indeed not similar in nature?" Like the director and the Panel, we conclude that these similarities are insufficient to categorize OIL as "other similar benefits."

## A. Law Governing Summary Judgment and Standard of Review

¶ 33    "[S]ummary judgment may be sought in a workers' compensation proceeding before the ALJ." *Fera v. Indus. Claim Appeals Office,* 169 P.3d 231, 232 (Colo. App. 2007). Under Office of Administrative Courts Rule of Procedure (OACRP) 17, 1 Code Colo. Regs. 104-3, a party may move "for summary judgment seeking resolution of any endorsed issue for hearing." Like a motion for summary judgment pursued under C.R.C.P. 56, summary judgment may be granted in a workers' compensation case if "there is no disputed issue of material fact and . . . the party is entitled to judgment as a matter of law." OACRP 17; *see also Nova v. Indus. Claim Appeals Office*, 754 P.2d 800, 802 (Colo. App. 1988) (noting that the Colorado Rules of Civil Procedure apply to workers' compensation proceedings unless inconsistent or in conflict with the procedures and practices followed under the Act).

¶ 34    We review an ALJ's legal conclusions on summary judgment de novo. *See A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo. 2005). However, we may only set aside an ALJ's factual findings if they are unsupported by substantial evidence in the record. § 8-43-308, C.R.S. 2018.

> We must therefore accept the ALJ's statements of undisputed facts . . . if substantial evidence in the record supports that statement of facts, but we must set aside the grant of summary judgment in an employer's favor if we determine that conflicts in the evidence are not resolved in the record or the order is not supported by applicable law.

*Fera*, 169 P.3d at 233.

B. Rules of Statutory Construction and Standard of Review

¶ 35    When we analyze a provision of the Act, "we interpret the statute according to its plain and ordinary meaning" if its language is clear. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). In addition, "when examining a statute's language, we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)).

¶ 36    We review issues of statutory construction de novo. *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006). Although we defer to the Panel's

reasonable interpretations of the statute it administers, *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo. 2006), we are "not bound by the Panel's interpretation" or its earlier decisions, *United Airlines v. Indus. Claim Appeals Office*, 2013 COA 48, ¶ 7; *Olivas-Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo. App. 2006). "The Panel's interpretation will, however, be set aside 'if it is inconsistent with the clear language of the statute or with the legislative intent.'" *Town of Castle Rock v. Indus. Claim Appeals Office*, 2013 COA 109, ¶ 11 (quoting *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo. App. 1998)), *aff'd*, 2016 CO 26.

## C. OIL Benefits Do Not Constitute "Other Similar Benefits" Under Section 8-42-124(2)(a)

¶ 37    Baum maintains that the similarities he describes make OIL benefits analogous to sick and vacation leave under UAL's Fleet Service Agreement. But, the director and the Panel reached a different conclusion. Although we interpret statutes de novo, we give considerable weight to the Panel's interpretation of the Act and stray from it only if the Panel's construction is inconsistent with the

clear language of the statute or the legislative intent.  *See Town of Castle Rock,* ¶ 11.

¶ 38 We conclude that the Panel's and the director's interpretation is consistent with the legislature's objectives and intent.  In our view, a critical difference removes OIL from under the umbrella of "other similar benefits" under section 8-42-124.  That significant difference, which both the director and the Panel found compelling, is that that OIL benefits can *only* be accessed by an injured worker once UAL has admitted a work-related injury is compensable or an ALJ has found a claim to be compensable.  The Fleet Services Agreement states that it applies only to injuries or illnesses "covered by the applicable state Workers' Compensation law, and must be verified in writing by the employee's treating physician."  Unlike vacation and sick leave, then, use of OIL is not discretionary or flexible.  Simply put, it can be accessed under one circumstance only: when a worker has suffered a compensable work-related injury.

¶ 39 Another difference between OIL and vacation or sick leave under UAL's Fleet Service Agreement is that a UAL worker who separates from employment is paid a lump sum for unused vacation

leave. OIL, in contrast, is simply lost: "If an employee's employment ceases for any reason, all of his or her credit for [OIL] will be cancelled, and no payment for such accumulated credit will be made at any time."

¶ 40 Notably, too, as a division of this court observed in *Public Service Co.*, the very nature of OIL benefits sets them apart from "vacation leave, sick leave, or other similar benefits." *Pub. Serv. Co.*, 789 P.2d at 488. "Indeed, it is generally recognized that vacation and sick pay are benefits earned by virtue of past services rendered and that, as such, these 'earned' benefits should not be impaired by the employee's work-related injury." *Id.* at 489. In contrast, OIL benefits — while, in this case, earned — are expressly intended to be used when — and only when — a worker suffers a work-related injury; their use does not "impair" the use of other earned benefits that can be exercised under other circumstances or cashed out at separation. Put differently, by using his OIL when he suffered a work-related injury, Baum did not impair or make his OIL benefit unavailable for another use.

¶ 41 Nor did Baum have to sacrifice any of his earned vacation or sick leave during his time of disability because OIL is drawn from a

separate pool of benefits.  It is drawn from a separate bank and its use insulates workers from depleting their sick or vacation leave because of a compensable work-related injury.

¶ 42    Baum suggests that because UAL's wage continuation plan permits injured workers to convert sick leave into OIL, the benefits are "similar" under the statute.[3]  However, UAL never requires a worker to use sick leave in this way.  Although a worker who exhausts his or her earned OIL "may elect to convert any remaining sick bank hours into occupational injury hours," no injured worker is required to do so.  An injured worker may instead choose to keep all his or her earned vacation and sick leave for future use or payout.  Conversion is therefore entirely within the injured worker's discretion and its use does not forcibly "impair" the worker's earned benefits.  *See id.*

---

[3] Baum's conversion argument would pack some persuasive punch if he were able to convert OIL into vacation or sick leave.  But the conversion option is a one-way street: from vacation to sick leave and from sick leave to OIL — not the other direction.  Thus, OIL does not enjoy the conversion flexibility accorded by UAL to its vacation and sick leave.

¶ 43　　These differences are significant enough to exclude OIL benefits from the umbrella of "other similar benefits" under section 8-42-124(2)(a).

¶ 44　　We note, too, that accepting Baum's characterization of UAL's OIL benefit would swallow wage continuation plans, rendering section 8-42-124(2)(a) practically meaningless. If plans like UAL's OIL benefit are barred from enjoying a TTD credit, then we have trouble envisioning what plan would fall within the statute's purview. Section 8-42-124's TTD credit was intended to motivate and encourage employers to fully compensate injured workers over and above the two-thirds average weekly wage guaranteed by the Act. *See* § 8-42-105. Any incentive an employer has for creating wage continuation plans — which unquestionably benefit workers by paying them more than TTD or even, as here, their full salary while disabled — would vanish if the mere fact that wage continuation plan benefits are accrued and earned makes them too similar to vacation and sick leave to qualify for the TTD credit. Baum's proposed interpretation would, thus, violate the prohibition against rendering a statutory provision meaningless. *See Chavez v.*

24

*People*, 2015 CO 62, ¶ 21 ("We strive to avoid interpretations that would render statutory language meaningless.").

¶ 45    For these reasons, we agree with the Panel and the director and reject Baum's contention that OIL benefits paid him under UAL's wage continuation plan constituted "other similar benefits" under section 8-42-124(2)(a).  *See Town of Castle Rock*, ¶ 11.

### D.  UAL Did Not Garner a Windfall

¶ 46    Last, we address Baum's contention that UAL enjoys a windfall unless it is barred from taking a credit for TTD benefits under this circumstance.  It is undisputed that taking credit for TTD benefits during the time Baum was paid OIL benefits triggered the statutory cap and eliminated any PPD benefits Baum may have otherwise received.  § 8-42-107.5.  But that does not constitute a windfall in UAL's favor.  Baum received his full pay while being paid OIL.  The legislature sought to encourage employers to implement wage continuation plans so that workers could receive a full salary even while disabled by a work-related injury.  We do not perceive that by taking the statutorily authorized credit, UAL enjoyed a windfall.  Indeed, during a portion of Baum's absence from work UAL paid him more than the minimum required by the Act.

¶ 47 To the extent Baum is also demanding payment of the TTD benefits to him, these would be over and above the full salary he received under OIL while on work-related disability leave. In other words, Baum would receive nearly $34,000 *more* than his salary, *plus* a PPD benefit payout in excess of $9000. That could be characterized as a windfall benefiting Baum.

¶ 48 In summary, we conclude that neither the director nor the Panel misinterpreted section 8-42-124 when ruling that UAL was entitled to take a credit for the $33,949.49 Baum would have received in TTD payments during the time he was paid OIL benefits. *Id.*

## V. Conclusion

¶ 49 The order is affirmed.

JUDGE FREYRE and JUDGE MÁRQUEZ concur.

26