The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 5, 2019

## 2019COA179

**No. 18CA2085, *Evans v. Evans* — Real Property — Spurious Liens and Documents**

A division of the court of appeals considers two issues involving invalidation of an encumbrance as a spurious lien or spurious document under section 38-35-201, C.R.S. 2019. First, is an order issued by a district court magistrate an "order" of a state court for purposes of Colorado's spurious lien statute? Second, is a summary of such a magistrate's order recorded in real property records a lien "imposed by" an order of a "state court"? The division answers both questions in the affirmative and holds that the appellees did not create a "spurious lien" or "spurious document" when they encumbered petitioner's real property by recording a

summary of a magistrate's order entered in the underlying

dissolution of marriage case.  The division, therefore, affirms.

COLORADO COURT OF APPEALS                                    2019COA179

Court of Appeals No. 18CA2085
Douglas County District Court No. 18CV30747
Honorable David J. Stevens, Judge

Ken Evans,

Plaintiff-Appellant,

v.

Delinda Evans,

Defendant-Appellee,

and

Jennifer Holt,

Attorney-Appellee.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE LIPINSKY
Webb and Davidson*, JJ., concur

Announced December 5, 2019

Richards Carrington LLC, Christopher P. Carrington, Ruth M. Moore, Denver,
Colorado, for Plaintiff-Appellant

Griffiths Law PC, Duncan Griffiths, Christopher J. Griffiths, Lone Tree,
Colorado, for Defendant-Appellee and Attorney-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    This appeal raises two narrow issues.  First, is an order issued by a district court magistrate an "order" of a state court for purposes of Colorado's spurious lien statute?  Second, is a summary of such a magistrate's order recorded in real property records a lien "imposed by" an order of a "state court"?

¶ 2    In the trial court, plaintiff, Ken Evans (husband), contended that appellees, Delinda Evans (wife) and her attorney, Jennifer Holt, wrongfully encumbered his real property in Douglas County by recording Holt's self-styled "Abstract" summarizing the magistrate's order.  He argued that the Abstract must be removed from the Douglas County real property records under the procedure set forth in section 38-35-204, C.R.S. 2019, and C.R.C.P. 105.1.  The district court disagreed with husband.  So do we.

¶ 3    We answer both questions "yes" and hold that appellees did not create a "spurious lien" or "spurious document" within the meaning of subsections (3) and (4) of section 38-35-201, C.R.S. 2019, when they encumbered husband's real property by recording a summary of a magistrate's order entered in the underlying dissolution of marriage case.  Therefore, we affirm.

## I.    Background

¶ 4    Four years after the district court entered a decree dissolving the Evanses' marriage, wife petitioned the court to modify the decree. She alleged that husband had violated his disclosure obligations in the dissolution of marriage proceeding by failing to inform her of his interest in certain business assets, as required under C.R.C.P. 16.2(e)(10). She asked the court to allocate the previously undisclosed assets.

¶ 5    Ruling without the parties' consent, which was not required under C.R.M. 6(b)(1)(A), a district court magistrate granted wife's petition and ordered husband to pay wife half of the value of the previously undisclosed assets in monthly installments:

> [T]he net marital value that must be divided is $2,337,278.00, of which [wife] shall receive $1,168,639.00. [Husband] shall pay [wife]'s sum at a minimum of $50,000.00 per month. Interest shall accrue at the statutory rate of 8% per annum, compounded annually, until paid in full. [Husband]'s payments toward this obligation must commence not later than 45 days from the date of this order, *and [this order] shall create a lien against all [husband]'s rights, title and interest in [the subject assets] and any other assets in his name.*

2

(Emphasis added.) Husband timely filed a petition for district court review of the magistrate's order.

¶ 6 Less than one week after husband filed the petition, Holt recorded a summary of the magistrate's order, entitled "Abstract of Court Order," with the Douglas County Clerk and Recorder. The Abstract said:

> [Husband] was . . . required by [the magistrate's] order to pay said $1,168,639.00 amount with interest at the rate of 8% per annum compounded annually until paid in full at the rate of not less than $50,000.00 per month commencing not later than 45 days after the date of the order *and further provided that [wife] was granted a lien against all [husband's] rights, title and interest in [the subject assets]*, and any other assets in his name.

(Emphasis added.)

¶ 7 Husband did not learn about the Abstract until months later, when he attempted to close a transaction secured by real property he owned in Douglas County. The Abstract appeared in the County's real property records as an encumbrance against his property. He argued that the transaction fell through because the Abstract clouded title to his property.

¶ 8     After discovering the Abstract, husband petitioned the district court to invalidate the Abstract as a "spurious lien" or "spurious document" on an expedited basis following the procedure set forth in section 38-35-204 and C.R.C.P. 105.1.  The court denied husband's petition, finding that the Abstract was neither a "spurious lien" nor a "spurious document" under the statutory definitions.

¶ 9     Although husband attacks the Abstract under several legal theories, we consider only whether it falls within the statutory definitions of "spurious lien" or "spurious document."  This case is not an appeal of any ruling in the Evanses' dissolution of marriage case.  Simply put, we must affirm the trial court's order unless we determine that the Abstract ran afoul of section 38-35-201, even if the Abstract or the underlying magistrate's order was invalid or otherwise unenforceable under another legal theory.

## II.     Standard of Review

¶ 10    We review de novo whether a recorded document is a spurious lien or spurious document, as defined in subsections (3) and (4) of section 38-35-201.  *See Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 53, 370 P.3d 238, 250.  We also review de novo whether

a district court applied the correct legal standard in a case filed under the statute. *See Pierce v. Francis*, 194 P.3d 505, 509 (Colo. App. 2008). And we review issues of statutory construction de novo. *Tuscany, LLC v. W. States Excavating Pipe & Boring, LLC*, 128 P.3d 274, 277 (Colo. App. 2005).

### III.  The "Spurious Lien" and "Spurious Document" Statute

¶ 11    For purposes of this case, a "spurious lien" is "a purported lien or claim of lien that: . . . [i]s not imposed by order, judgment, or decree of a state court . . . ." § 38-35-201(4)(c). "State court" means "a court established pursuant to title 13, C.R.S." § 38-35-201(5). A "spurious document" is "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." § 38-35-201(3).

¶ 12    Section 38-35-204 and C.R.C.P. 105.1 provide an expedited remedy for persons whose real property is encumbered by a "spurious lien" or a "spurious document." Any person whose property is so encumbered may petition the district court for an order to show cause why the spurious lien or spurious document should not be declared invalid and released. *See* § 38-35-204(1); C.R.C.P. 105.1. The court must hold a hearing at which the

5

proponent of the recorded document has an opportunity to respond to the order to show cause. *See* § 38-35-204(1)(a); C.R.C.P. 105.1(a)(1).

¶ 13 Following the show cause hearing, if the district court "determines that the lien or document is a spurious lien or spurious document, [it] shall make findings of fact and enter an order and decree declaring the spurious lien or spurious document . . . invalid [and] releasing the recorded or filed spurious lien or spurious document." § 38-35-204(2); *see* C.R.C.P. 105.1(d); *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 31, 373 P.3d 644, 650, *aff'd on other grounds*, 2016 CO 31, 379 P.3d 278.

¶ 14 The General Assembly established this mechanism, which takes less time and involves fewer procedural steps than quiet title actions and most other types of civil cases, "to protect individuals from those who use groundless claims to cloud title to real property as a form of protest or harassment." *Westar Holdings P'ship v. Reece*, 991 P.2d 328, 331 (Colo. App. 1999).

## IV. The Abstract Is Neither a "Spurious Lien" Nor a "Spurious Document"

### A. The Abstract Does Not Meet the Statutory Definition of "Spurious Lien"

¶ 15    Husband contends that the Abstract is a spurious lien because, while it purports to encumber his property, the underlying magistrate's order is not an "order" and, therefore, the Abstract is not a valid "lien" within the meaning of section 38-35-201(4)(c). As noted above, a lien cannot be spurious if it is "imposed by order . . . of a state court . . . ." *Id.*

¶ 16    First, husband asserts that, in non-consent cases, a magistrate's order is merely an unenforceable recommendation and not a court order. Second, he contends that a magistrate's order is not an order "of a state court" because magistrates' orders are not orders of a district court. Third, he argues that because the Abstract did not satisfy the requirements for a judgment lien, it was not a "lien . . . imposed by order . . . of a state court" under the statute. *Id.* We consider and reject each of these assertions.

### 1. The Magistrate's Order Was an Enforceable "Order" at the Time Wife's Attorney Recorded the Abstract

¶ 17   In contending that the magistrate's order was not an "order" when wife's attorney recorded the Abstract, husband attacks the authority of magistrates in non-consent cases.  He argues that, until a district court reviews a magistrate's order or the time for such review has passed, a magistrate's order is merely a recommendation.  Husband, however, rests this argument on case law analyzing the actions of state court referees at a time when they possessed less authority than do present-day magistrates.

¶ 18   For example, husband cites to *In re Marriage of Petroff*, 666 P.2d 1131, 1132 (Colo. App. 1983), which held that, under a local rule of the Twentieth Judicial District, a referee's decision was merely a recommendation, and not an order or judgment, absent further district court action.  (All district court local rules were repealed five years after *Petroff*.  C.R.C.P. 121(b).)

¶ 19   But the law governing referees changed two years later.  "The decision of the referee shall remain in full force and effect while a reconsideration is pending unless stayed by the judge for good cause shown."  Ch. 132, sec. 4, § 13-5-305(2)(b), 1985 Colo. Sess.

8

Laws 590.  This statutory language mirrors current Magistrate Rule 5(a), which states that "[a]n order or judgment of a magistrate . . . shall be effective upon the date of the order or judgment and shall remain in effect pending review by a reviewing judge unless stayed by the magistrate or by the reviewing judge."  C.R.M. 5(a); *see* § 13-5-201(3), C.R.S. 2019 ("District court magistrates may hear such matters as are determined by rule of the supreme court . . . .").  Husband does not point us to any order staying the magistrate's order.

¶ 20     Under the authority of section 13-5-201(3), the supreme court empowered magistrates to modify permanent orders in dissolution of marriage proceedings without the parties' consent.  *See* C.R.M. 6(b)(1)(B) ("A district court magistrate shall have the power to preside over all motions to modify permanent orders concerning property division . . . .").

¶ 21     Husband's attack on the power of magistrates to enter orders in non-consent cases cannot be squared with the unambiguous language of Magistrate Rule 5(a).  The magistrate's order was enforceable when entered, even though husband timely appealed it

to the district court.  *See* C.R.M. 7(a) (providing that magistrate's orders not requiring consent must be appealed to the district court).

### 2.    The Magistrate's Order Is an Order of a State Court

¶ 22    Husband contends that, even if the magistrate's order was an enforceable "order" under C.R.M. 5(a), it is not an "order . . . of a state court," within the meaning of section 38-35-201(4).  Therefore, he argues, the Abstract is spurious because it was not a lien "imposed by order . . . of a state court . . . ." § 38-35-201(4)(c).

¶ 23    The spurious lien statute defines "state court" as a court "established pursuant to title 13, C.R.S." § 38-35-201(5).  Husband asserts that district courts are "established pursuant to title 13" because they are courts of record under title 13.  He argues that, unlike district judges' orders, magistrates' orders in non-consent cases are not those of a "district court."  Thus, he continues, the magistrate's order was not entered by a "state court."

¶ 24    Husband's argument, however, ignores the authority vested in magistrates to act as officers of district courts.  *See In re R.G.B.*, 98 P.3d 958, 960 (Colo. App. 2004) (holding that magistrates are hearing officers who act with limited authority).  While magistrates are not judges, they perform judicial functions.  C.R.M. 1 ("Although

10

magistrates may perform functions which judges also perform, a magistrate at all times is subject to the direction and supervision of the chief judge or presiding judge."); *see In re Parental Responsibility of M.B.-M.*, 252 P.3d 506, 509-10 (Colo. App. 2011).

¶ 25    Magistrates are authorized to act as officers of the district court in certain matters. *See* § 13-5-201; C.R.M. 3(a) (explaining a magistrate is "[a]ny person other than a judge authorized by statute or by these rules to enter orders or judgments in judicial proceedings"). As noted above, in domestic relations proceedings, "[a] district court magistrate shall have the power to preside over all motions to modify permanent orders concerning property division, maintenance, child support or allocation of parental responsibilities." C.R.M. 6(b)(1)(B). And a magistrate can exercise this power without the parties' consent. *Id.*; *see* C.R.M. 6(b)(1).

¶ 26    Husband fails to explain in whose name district court magistrates enter their orders, if not the name of the district court to which they are assigned and for which they work. Section 13-5-201 and the Magistrate Rules do not establish a judicial junior varsity league comprised of magistrates. After all, district court magistrates routinely place the court's name on their rulings and

11

label them "orders" without facing accusations of usurping the court's authority.

¶ 27    For these reasons, the magistrate was authorized to act on behalf of the district court when she entered the order at issue. Thus, the magistrate's order is an order of the district court.

¶ 28    Husband relies on inapposite authority in arguing that magistrates' orders are not district court orders. He cites to the rule specifying the process for appealing magistrates' orders. C.R.M. 7(a)(12) ("If timely review in the district court is not requested, the order or judgment of the magistrate shall become the order or judgment of the district court. Appeal of such district court order or judgment to the appellate court is barred."). Husband argues that, because he requested timely review by the district court, the magistrate's order was not the equivalent of an order of a district court judge during the pendency of the review. C.R.M. 7(a)(12), however, addresses when a magistrate's order may be appealed, and not whether such an order is a district court order. Husband's argument conflates the authority to issue an enforceable order with the distinct question of how a magistrate's order can be appealed.

12

¶ 29    In sum, the magistrate's order was an "order . . . of a state court" for purposes of section 38-35-201(4)(c). Thus, any lien imposed by the magistrate's order could not have been spurious.

### 3. A Lien Imposed by a Court Order Need Not Be a Judgment Lien

¶ 30    Husband further contends that only a judgment lien created by recording a court-issued transcript of judgment can be a lien "imposed by order, judgment, or decree of a state court . . . ." § 38-35-201(4)(c). According to husband, "there is no support for allowing a litigant to cloud its adversary's title to real property by recording an attorney-created document that is not a certified copy of an enforceable order, judgment or decree." We disagree.

¶ 31    To create a judgment lien, a party must record a transcript of the judgment certified by the clerk of court. *See* § 13-52-102(1), C.R.S. 2019. "[F]rom the time of recording such transcript, and not before, the judgment shall become a lien upon all the real estate, not exempt from execution in the county where such transcript of judgment is recorded, owned by such judgment debtor." *Id.* The parties do not dispute that wife's attorney did not record a

13

transcript of judgment and, for that reason, the Abstract was not a judgment lien.

¶ 32     Wife, however, did not need a judgment lien to encumber husband's property.  Unlike a typical money judgment, the magistrate's order by its terms created an equitable lien to secure husband's payment obligation to wife.  It expressly said that the judgment entered against husband would be secured by "a lien against all [husband]'s rights, title and interest in [the subject assets] and any other assets in his name."

¶ 33     In light of the lien language in the magistrate's order, wife did not require a transcript of judgment or other separate document to create a lien against husband's property.  *See Willis v. Neilson*, 32 Colo. App. 129, 132, 507 P.2d 1106, 1108 (1973) (holding that language in stipulation incorporated into divorce decree providing that husband's real estate was security for payment of sum owed to wife created lien against husband's real property).  But she needed to record documentation of the lien to perfect her interest in husband's real property.  *See* § 38-35-109(1), C.R.S. 2019; *Nile Valley Fed. Sav. & Loan Ass'n v. Sec. Title Guarantee Corp. of Balt.*, 813 P.2d 849, 851 (Colo. App. 1991) (Section 38-35-109 "requires a

secured party properly to record his interest in real property with the clerk and recorder of the county in which the property is located in order to protect his interest against those who subsequently claim interests in the same property.").

¶ 34 Contrary to husband's position, Colorado law does not limit the documents that can be recorded to enforce a judicially created lien to "certified cop[ies] of an enforcement order." *See* § 38-35-109(1) ("All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record may be recorded . . . ."). We need not consider whether wife could enforce the lien referenced in the magistrate's order by foreclosing on husband's property, however, as our inquiry is limited to whether the Abstract is a spurious lien or a spurious document.

¶ 35 Section 38-35-201 does not specify that a lien "imposed by order, judgment, or decree of a state court" must take the form of a judgment lien. Rather, under the plain meaning of the statute, any type of lien "imposed by order, judgment, or decree of a state court" cannot be spurious, regardless of how it was created or what it is

called. § 38-35-201(4)(c). Because, as explained above, the magistrate's order was an "order, judgment, or decree of a state court," any recorded document that accurately characterized the lien created through the magistrate's order would not be spurious. For this reason, the Abstract, when recorded, created a lien "imposed by" an order of a state court within the meaning of section 38-35-201(4)(c).

¶ 36    This interpretation is consistent with the purpose of the spurious lien statute, which is to provide a process for removing *groundless* claims against title. *Westar Holdings*, 991 P.2d at 331. The Abstract is not groundless, as it accurately summarizes the language of an enforceable court order.

¶ 37    Therefore, we disagree with husband's argument that a judgment lien was the only means by which wife could have encumbered his property for purposes of enforcing the magistrate's order. (Although we hold that the Abstract does not run afoul of the spurious lien statute, we neither address its validity in other contexts nor condone the practice of recording attorney-drafted summaries of court orders.)

## B. The Abstract Was Not a Spurious Document

¶ 38      Husband alternatively contends that the Abstract was a "spurious document" because it did not accurately reflect the terms of the lien described in the magistrate's order and, therefore, was materially misleading within the meaning of section 38-35-201(3). The trial court disagreed "because the statement in the Abstract is language from the Order itself." We agree with the trial court.

¶ 39      Husband contends that the lien described in the magistrate's order would become effective only if he failed to make one of the required monthly payments and that the lien did not secure his entire $1,168,639 indebtedness to wife. As husband accurately notes, the magistrate's order explained that "[husband]'s payments toward this obligation [$1,168,639] must commence not later than 45 days from the date of this order, and [the order] shall create a lien against all [husband]'s rights, title and interest in [the subject assets] and any other assets in his name." But we do not need to determine the scope of the lien, because the language of the Abstract is so similar to that of the magistrate's order. Given the similarity between the magistrate's order and the Abstract, the latter accurately characterized the former and was not misleading.

¶ 40    Husband further argues that the Abstract was not a proper judgment lien, violated the judgment enforcement statute, did not satisfy the requirements of the relevant real property recording statutes, and was not a valid *lis pendens.* But, as explained above, the definition of spurious document requires more than an invalid encumbrance — the encumbrance must be "patently invalid." § 38-35-201(3). None of husband's miscellaneous arguments explains why the Abstract was "patently invalid," even if a closer look may have shown it was "invalid." When examining the statutory definition of "spurious document," we must "give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Baum v. Indus. Claim Appeals Office*, 2019 COA 94, ¶ 35, ___ P.3d ___, ___ (quoting *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008)).

¶ 41    A division of this court explained that a spurious document is one "for which a proponent can advance no rational argument based on evidence or the law to support the claim." *Westar Holdings*, 991 P.2d at 330. The "no rational argument" test is

similar to the definition of a "[p]atently insubstantial claim[]" as one that is "essentially fictitious." *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 667 (D.C. Cir. 2013) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)). Thus, a spurious document is one that no rational argument can support and that is "essentially fictitious."

¶ 42 For example, in *Egelhoff v. Taylor*, the disputed encumbrance reflected a judge's purported $500 million indebtedness to an offender whom the judge had sentenced, which the judge allegedly created by failing to contest the alleged debt under a "Commercial Affidavit Process" not recognized under Colorado law. 2013 COA 137, ¶¶ 17-19, 312 P.3d 270, 273-74. The *Egelhoff* court rejected the offender's baseless arguments and affirmed the trial court's finding that the alleged lien was spurious. *Id.* at ¶ 21, 312 P.3d at 274.

¶ 43 In contrast, wife has advanced a rational argument that the Abstract reflects an enforceable order. Even if the Abstract were invalid, it is not the type of patently invalid document that section 38-35-210 was enacted to invalidate. *See Westar Holdings*, 991 P.2d at 331. Thus, the Abstract is not a spurious document.

## V. The Parties' Requests for Attorney Fees

¶ 44 Rule 105.1 provides, in relevant part, that

> [i]f, following the hearing on the order to show cause, the court determines that the lien or document is not a spurious lien or document, the court shall issue an order so finding and enter a monetary judgment against the petitioner and in favor of the respondent in the amount of the respondent's costs, including reasonable attorney fees.

C.R.C.P. 105.1(d); *see* § 38-35-204(3).

¶ 45 In light of our disposition of this appeal, we deny husband's request for attorney fees, grant the request of wife and wife's attorney for recovery of their costs, including reasonable attorney fees, and remand for findings of the amount of such costs awardable to wife and wife's attorney.

## VI. Conclusion

¶ 46 The district court's order is affirmed. We remand to the district court for findings on the amount of reasonable attorney fees and other costs awardable to wife and wife's attorney under section 38-35-204(3) and C.R.C.P. 105.1.

JUDGE WEBB and JUDGE DAVIDSON concur.