The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2020

## 2020COA51

**No. 18CA2084, Better Baked, LLC v. GJG Property, LLC — Real Property — Spurious Liens and Documents — Lis Pendens**

In this dispute over a right of first refusal in a commercial lease, a division of the court of appeals considers how to assess the spuriousness of a lis pendens under the Spurious Liens and Documents statute, sections 38-35-201 to -204, C.R.S. 2019.  A majority of the division concludes that the "spuriousness" of a lis pendens does not turn on an assessment of the merits of the claim in connection with which the lis pendens was filed; rather, it turns solely on whether the lis pendens is filed in connection with a claim that affects title to real property.  Because tenant's claim was based on a right of first refusal, the enforcement of which can affect title to

real property, the lis pendens in this case was not groundless or spurious.

A dissenting judge opines that whether a lis pendens is groundless (and hence spurious) depends not on whether it has been filed in connection with a claim affecting title to real property, but, rather, on the merits of the claim in connection with which it was filed. Because, in the dissenting judge's view, the documentary evidence unambiguously revealed that the parties had terminated tenant's right of first refusal with respect to the purchase of real property, tenant's lis pendens was groundless and, hence, spurious.

Court of Appeals No. 18CA2084
City and County of Denver District Court No. 18CV30754
Honorable Jay S. Grant, Judge

Better Baked, LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

GJG Property, LLC, a Colorado limited liability company; Peak Holdings Group, LLC, a Colorado limited liability company; and Dorenka LLC, a New York limited liability company,

Defendants-Appellees.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Navarro, J., concurs
Miller*, J., concurs in part and dissents in part

Announced March 26, 2020

City Park Law Group, LLC, Wayne E. Vaden, Denver, Colorado; Van Remortel, LLC, Fred Van Remortel, Denver, Colorado, for Plaintiff-Appellant

Brown Dunning Walker, PC, Neal K. Dunning, Drew P. Fein, Denver, Colorado; Shapiro Bieging Barber Otteson, LLP, Julie A. Trent, Duncan E. Barber, Denver, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    In this dispute over a right of first refusal (ROFR) in a commercial lease, Better Baked, LLC (tenant), appeals the district court's judgment entered in favor of GJG Property, LLC (landlord); Peak Holdings Group, LLC (Peak); and Dorenka LLC (Dorenka) (collectively, petitioners) granting their petition to declare that two lis pendens recorded by tenant against property owned by landlord and partly leased to tenant were spurious documents. The court also awarded petitioners attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

*I. Factual Background and Procedural History*

¶ 2    Tenant leased approximately 6800 square feet in a 7800-square-foot warehouse owned by landlord (the property). Article forty-two of the lease gave tenant an ROFR for the five-year term of the lease. Under the ROFR, if landlord offered to sell the property or received and desired to accept a bona fide offer to purchase the property, landlord was required to send tenant a copy of the contract and notice of its intent to make or accept an offer. Then, tenant would have the right to purchase the property on the same terms and conditions set forth in the contract.

1

¶ 3   In 2016, after a dispute arose between tenant and landlord concerning some charges under the lease, tenant brought an action against landlord seeking declaratory relief.  Tenant and landlord settled their dispute and the case was dismissed without prejudice.

¶ 4   In August 2017, tenant procured a buyer for the property, Larry and Ramona Reed.  The Reeds and landlord signed a purchase agreement.  During the executory period of that contract, tenant and landlord entered into a First Amendment to the lease.  A recital explained:

> Landlord is under contract to sell the Property (the "Transaction"), which sale is contingent on the waiver and termination of the ROFR. Tenant has agreed to waive and terminate the ROFR.

In the First Amendment, the parties agreed that

> Tenant acknowledges and agrees that it has received all information regarding the Transaction that it has requested and it hereby waives the ROFR with respect to the Transaction.
>
> As of the Effective Date, the Lease is hereby amended to delete Article 42.

¶ 5   In February 2018, landlord entered into a different purchase agreement for the property with Peak, another tenant at the

property that had asserted an ROFR under its lease. Peak assigned its rights to Dorenka. Landlord asserted that tenant's ROFR waiver in the First Amendment applied to the pending Dorenka purchase, which tenant disputed.

¶ 6    Tenant's counsel recorded a lis pendens against the property that referenced the dismissed action. A few days later, tenant commenced a new action against landlord and recorded a second lis pendens referencing that action. The complaint in the new action sought damages and declaratory relief that tenant was "entitled to the exercise the first right of refusal." Tenant did not seek specific performance.

¶ 7    Petitioners brought an action against tenant to remove both lis pendens as spurious documents under sections 38-35-201 to -204, C.R.S. 2019, which governs "spurious" liens and documents. This action was consolidated with tenant's second action. Following a show-cause hearing, the district court entered a written order that included the following findings:

- tenant "has failed to provide an adequate showing that [its] waiver of their [sic] right of first refusal was condition [sic] on the sale of the property to the Reeds";

3

- "the only credible evidence presented to the court showed that the waiver was valid and that it contained no conditional language"; and

- tenant's conduct, "by bringing a third party (the Reeds) to purchase the Property, acted as a constructive waiver of their [sic] right of first refusal."

¶ 8    Based on these findings, the court determined that, even if meritorious, the claims asserted in tenant's second action "would not affect title to, or the right of possession of the Property."  It concluded that both lis pendens were "groundless, and as such, are spurious and invalid," released both, and awarded attorney fees against tenant.

¶ 9    Subsequently, the court, acting pursuant to C.R.C.P. 54(b), certified that there was no just reason for delay in entering final judgment in petitioners' favor.

## II.  Issues Presented

¶ 10    Tenant asserts that the district court made four errors:

1. declaring both lis pendens spurious "despite being lawfully recorded . . . in conjunction with the filing of [tenant's] complaints";

2. concluding that the ROFR waiver in the first amendment was not contingent on sale to the Reeds;

3. concluding that even if the waiver could have been applied in a sale to Peak, it could also be applied to the Dorenka sale; and

4. concluding that by procuring the Reeds as buyers, tenant "constructively waived the ROFR."

¶ 11 We agree with tenant that the district court erred in reaching the waiver issue. Thus, we conclude that it erred in finding the second lis pendens was groundless. Given that conclusion, we do not reach tenant's second, third, or fourth issues.

### III. The Trial Court Erred in Concluding that the Second Lis Pendens Was Groundless

¶ 12 Tenant says, "Even assuming, *arguendo*, that the First Lis Pendens was invalid because the underlying case had been dismissed, the Second Lis Pendens was not . . . ." Tenant contends that the district court evaluated its second lis pendens under the wrong standard. Tenant argues that rather than reaching the merits of landlord's waiver defense, the district court should have asked only whether, based on the allegations in the complaint concerning the ROFR, tenant had put forward a "rational argument

5

based on the evidence or the law" that the second action could affect title to real property. We agree with tenant.

### A. Law

#### 1. Lis Pendens

¶ 13    Section 38-35-110(1), C.R.S. 2019, authorizes the recording of a lis pendens "[a]fter filing of any pleading" when the relief sought "affect[s] the title to real property." The recording is proper if the claimant shows that the claim "relates to a right of possession, use, or enjoyment of real property." *Hewitt v. Rice*, 154 P.3d 408, 412 (Colo. 2007); *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994).

¶ 14    Our supreme court broadly interprets the phrase "affecting the title to real property." *Kerns v. Kerns*, 53 P.3d 1157, 1165 (Colo. 2002) (quoting § 38-35-110(1)). In *Pierce v. Francis*, a division of this court explained that construing the lis pendens statute broadly furthers the policy behind the statute. 194 P.3d 505, 509-10 (Colo. App. 2008) ("The policy underlying a notice of lis pendens is to prevent a proceeding involving real property rights from being thwarted by transfers of property interests to persons not bound by the outcome of the proceeding."). It added, "even when a dispute

6

does not seek to change ownership in any way but involves a determination of rights incident to ownership, a lis pendens notice is appropriate." *Id.* (also noting that, because claims in a will contest could affect title to real property in the estate, those claims were sufficient to justify recording a lis pendens); *see Kerns*, 53 P.3d at 1164-65 (an equitable action to impose a constructive trust on real property does not operate directly on title but is a type of action that may affect legal title); *Hammersley v. Dist. Court*, 199 Colo. 442, 446, 610 P.2d 94, 97 (1980) (An action to enforce building restrictions in a restrictive covenant is one "affecting title to real property.").

¶ 15      An ROFR[1] may affect title to real property within the meaning of section 38-35-110(1).  In *Cambridge Co. v. East Slope Investment*

_____

[1] An ROFR is a potential buyer's contractual right to meet the terms of a third party's offer.  Black's Law Dictionary 1586 (11th ed. 2019).  In contrast to an option, an ROFR is a preemptive right, *i.e.*, it does not give the holder of an ROFR the power to compel the property owner to sell like an option would, but merely requires the property owner to offer the property to the ROFR holder before it decides to sell.  *See, e.g., Stuart v. D'Ascenz*, 22 P.3d 540, 541-42 (Colo. App. 2000).  If the property owner sells a property to a third party without providing the ROFR holder an opportunity to meet the terms of the third party's offer, the ROFR holder is entitled to relief.  *See Peters v. Smuggler-Durant Mining Corp.*, 910 P.2d 34, 38

*Corp.*, a division of this court held that a valid ROFR for condominium units "create[s] an interest in land subject to a condition precedent." 672 P.2d 211, 213 (Colo. App. 1983), *rev'd on other grounds*, 700 P.2d 537 (Colo. 1985). Likewise, in *Houtchens v. United Bank of Colorado Springs, N.A.*, another division acknowledged that an ROFR could be subject to the statute of frauds because it involved an interest in land. 797 P.2d 814, 815 (Colo. App. 1990). And in two other cases, the holders of ROFRs recorded notices of lis pendens to protect their interests in real property. *Thompson v. Md. Cas. Co.*, 84 P.3d 496 (Colo. 2004); *Hein Enters., Ltd. v. S.F. Real Estate Inv'rs*, 720 P.2d 975 (Colo. App. 1985).

¶ 16    "The vast majority of courts and commentators have held that [ROFRs] . . . are interests in property and not merely contract rights," because "if the property owner attempts to sell to someone other than the owner of the right of first refusal . . ., the latter may have a court of equity enter a decree of specific performance ordering that the property be conveyed to him." *Ferrero Constr. Co.*

(Colo. App. 1995) (ROFR holder may seek specific performance), *aff'd*, 930 P.2d 575 (Colo. 1997).

*v. Dennis Rourke Corp.*, 536 A.2d 1137, 1139 (Md. 1988); *see Stuart Kingston, Inc. v. Robinson,* 596 A.2d 1378, 1384 (Del. 1991) ("[A] vast majority of courts and commentators view [ROFRs] as equitable claims sufficient to support an action for specific performance . . . . Because the holder of the [ROFR] acquires merely an equitable interest, it remains inchoate until the owner decides to sell thus triggering the [ROFR]."); *see also In re Jenkins,* 74 B.R. 440, 445 (Bankr. N.D. Ga. 1987) (holding that an ROFR contained in a deed "affect[s] the nature, quality, value, or mode of enjoyment of the demised premises," so "it is not a mere personal covenant, but one that runs with the land . . . .").

### 2. Spurious Documents

¶ 17    The spurious liens and documents statute protects property owners from frivolous claims used to cloud title as a means of protest or harassment. *Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 20.[2] It defines "lien" as "an encumbrance on real or personal property." § 38-35-201(2), C.R.S. 2019. Because a lis pendens does not constitute a lien against real property, *Hewitt,*

---

[2] "We review de novo whether a recorded document is a spurious lien or spurious document." *Evans v. Evans,* 2019 COA 179, ¶ 10.

9

154 P.3d at 412, this case involves a document rather than a lien. The statute authorizes an action by any person "whose real . . . property is affected by a recorded or filed . . . document" to petition for the release of a "spurious document."  § 38-35-204(1), C.R.S. 2019; *see* C.R.C.P. 105.1.

¶ 18    The statute defines a "spurious document" as "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid."  § 38-35-201(3). Although the statute does not define "groundless," a division of this court described a groundless document as one to which "the proponent can present no rational argument based on the evidence or the law in support of his or her claim . . . ."  *Int'l Tech. Instruments, Inc. v. Eng'g Measurements Co.*, 678 P.2d 558, 563 (Colo. App. 1983), *superseded by statute as stated in Colo. Dep't of Soc. Servs. v. Bethesda Care Ctr.*, 867 P.2d 4 (Colo. App. 1993). This interpretation has become the prevailing view.  *See, e.g., Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 58, *aff'd*, 2016 CO 31; *Platt v. Aspenwood Condo. Ass'n, Inc.*, 214 P.3d 1060, 1068 (Colo. App. 2009); *Westar Holdings P'ship v. Reece*, 991 P.2d 328, 330 (Colo. App. 1999); *Harris v. Hanson*, 821 P.2d 821, 824 (Colo. App. 1991).

¶ 19    Procedurally, after an aggrieved party files a petition, the district court issues an order to show cause why it should not declare the document invalid. C.R.C.P. 105.1(a). At a hearing, the court must consider the merits of the petition based on evidence presented at the hearing. *Egelhoff v. Taylor*, 2013 COA 137, ¶ 11. After the hearing, the court must make findings of fact; if it determines that a document is spurious, it must enter an order invalidating and releasing the document and award costs to the petitioner. § 38-35-204(2); C.R.C.P. 105.1(d).

¶ 20    A notice of lis pendens can be a spurious document. *Shyanne Props., LLC v. Torp*, 210 P.3d 490, 491 (Colo. App. 2009); *Pierce*, 194 P.3d at 508; *see also Hewitt*, 154 P.3d at 414 (discussing potential remedies for a wrongful filing). But a lis pendens is not groundless merely because the underlying claim may fail. In *Platt*, the division noted that, although the plaintiffs' claims were ultimately unsuccessful, they were "advanced in good faith," and plaintiffs had put forward "a rational argument, based upon facts and the law, in support of their claim," thus their lis pendens was not a spurious document. 214 P.3d at 1068.

11

¶ 21    The *Platt* approach reflects the majority view.  *See* 14 Richard

R. Powell, Powell on Real Property § 82A.05[3][a] (Michael Allen Wolf

ed. 2000) (discussing how courts considering motions to cancel a lis

pendens do not "determin[e] the probable outcome of the litigation

. . . ; rather court[s] generally focus on the issue of whether the

relief sought . . . is the kind that triggers the doctrine of lis

pendens").  Although the exact wording of lis pendens statutes and

procedures for invalidating lis pendens in other states vary, courts

in other states have echoed *Platt*.  *E.g.*, *Darr v. Muratore*, 143 B.R.

973, 977 (D.R.I. 1992) ("The Court must determine from the

allegations in the complaint, taken as true, whether the Trustee has

asserted a claim concerning title to or an interest in real property.

The Trustee need not establish that [creditor] will ultimately

succeed on the merits.") (citations omitted); *TWE Ret. Fund Tr. v.*

*Ream*, 8 P.3d 1182, 1188 (Ariz. Ct. App. 2000) ("[C]ourts must

examine whether there is some basis for concluding that the action

meets this definition, and need not — indeed, should not —

determine the merits unless such a determination is necessary to

the decision."); *DeCroteau v. DeCroteau*, 65 N.E.3d 1217, 1220

(Mass. App. Ct. 2016) ("[T]he allowance or denial of a . . . lis

12

pendens hinges on the nature of the claim, not the merits thereof."); *Elna Constr. Co. v. Flynn*, 240 N.Y.S.2d 581, 584 (N.Y. Sup. Ct. 1963) ("In an application for the cancellation of a Lis Pendens, the Court may not consider the merits of the action or the ability of the plaintiff to successfully maintain the action.").

## B. Application

¶ 22     To determine whether tenant's second lis pendens was groundless, we must first decide whether an ROFR affects "the title to real property" within the meaning of section 38-35-110(1).  Then, we turn to whether tenant advanced a "rational argument based on the evidence or the law" to support its claim.

### 1. Tenant's ROFR Affects Title to Real Property

¶ 23     The district court found that "the claims asserted in [tenant's] Complaint, if meritorious, would not affect title to, or the right of possession of the Property . . . ."  For three reasons, we disagree.

¶ 24     First, the lease created interests in real property for tenant. *See Kunz v. Cycles W., Inc.*, 969 P.2d 781, 783 (Colo. App. 1998) ("A commercial lease is both a conveyance of an interest in real property and a contract.").  The ROFR was one interest in the bundle of rights in the lease.  *See Houtchens*, 797 P.2d at 815;

13

*Cambridge Co.*, 672 P.2d at 213. In *Pierce*, the division held that a lis pendens is valid if the action "could ultimately change legal title" to property or "involves a determination of rights incident to ownership." 194 P.3d at 510. Because tenant could have sought an equitable remedy to enforce its ROFR, that right related to "possession, use, or enjoyment of real property." *Hewitt*, 154 P.3d at 412; *James H. Moore & Assocs. Realty, Inc.*, 892 P.2d at 373; *see Peters*, 910 P.2d at 42 ("[S]ince [the property owner] failed to send [the ROFR holder] notice of its [ROFR], the trial court did not err in granting [the ROFR holder's] request for specific performance.").

¶ 25 Second, the public policy concern underpinning the lis pendens statute further bolsters this conclusion. If an ROFR holder could not record a notice of lis pendens, it could lose its bargained-for right to obtain a property. *Pierce*, 194 P.3d at 509-10; § 38-35-109(1), C.R.S. 2019 (unrecorded documents invalid against subsequent purchasers without notice).

¶ 26 Third, courts must construe the phrase "affecting the title to real property" in the lis pendens statute broadly. *Kerns*, 53 P.3d at 1165. As discussed, an ROFR imposes a restraint on alienation that limits the property owner's right to convey title.

14

## 2. *The Second Lis Pendens Was Not Groundless*

¶ 27    The district court found "the first and second Lis Pendens to be groundless, and as such are spurious and invalid . . . ."  The district court did not offer different rationales for each lis pendens.  We conclude that separate analyses are required.

¶ 28    Tenant concedes that when it recorded the first lis pendens, the first action had been dismissed and the dismissal was not appealed.  Accordingly, we agree with the district court that the first lis pendens was groundless.

¶ 29    However, the district court's treatment of the second lis pendens calls for more careful examination.  The district court found that tenant's express waiver of the ROFR in the first amendment "was valid," and that tenant had "constructively waived" the ROFR by bringing in the Reeds as potential purchasers.  Based on these findings, the court concluded that the second lis pendens was groundless.

¶ 30    On the one hand, the statute required the district court to conduct a hearing, allow the parties to present evidence, and make factual findings.  § 38-35-204(2); C.R.C.P. 105.1(d), *see Egelhoff*, ¶ 11; *Westar*, 991 P.2d at 330.  But on the other hand, the district

15

court should not have turned the show-cause hearing into a mini-trial on the merits of tenant's ROFR claim and landlord's waiver defense in the underlying action.

¶ 31     Some tension exists in our case law on this issue.  *Platt* held that a trial court should not invalidate a lis pendens solely because the underlying claims may fail.  214 P.3d at 1068.  By contrast, the *Westar* division endorsed a broader inquiry into the merits of the underlying action.  991 P.2d at 330-32.  To the extent that these cases conflict, we choose to follow the narrower approach in *Platt*.  A show-cause hearing under C.R.C.P. 105.1 is an expedited proceeding that does not contemplate discovery.  Deciding a case on the merits under these circumstances could frustrate the truth-seeking process.  And for this reason, courts in most jurisdictions do not reach the merits of the underlying litigation in a motion to cancel a lis pendens.  *See* Powell, § 82A.05[3][a].

¶ 32     The *Platt* approach would not preclude parties disputing a lis pendens from presenting evidence in a show-cause hearing, but it would limit how a district court evaluates this evidence in determining groundlessness.  For example, a court could receive the underlying complaint into evidence as the district court did here.  In

16

addition, the court could take evidence concerning the status of the underlying action, such as whether a particular claim affecting title or the entire action had been dismissed. But that inquiry should stop well short of what the district court did here — reaching the merits of the ROFR claim in tenant's complaint and landlord's waiver defense to decide whether the lis pendens was groundless.

¶ 33    In statutory challenges to other types of purportedly spurious documents or liens, the *Platt* approach would impose fewer restrictions than the *Westar* approach. For example, an instrument outside the chain of title could be challenged with evidence that the grantor had no interest in the property — a question that the district court must resolve. *See Battle N., LLC,* ¶ 54 ("The grantor has no interest to convey."); *GMAC Mortg. Corp. v. PWI Grp.,* 155 P.3d 556, 557 (Colo. App. 2006) ("The lenders argue that, because Mandalay Holdings had no record interest in the subject properties it conveyed to the public trustee, its deed of trust is a 'wild deed' outside the chain of title; thus, the Mandalay deed of trust is a spurious document."). With most liens or other documents, groundlessness or frivolousness can be decided based on evidence directly related to the document or lien. By contrast, here the

17

district court considered evidence of an underlying transaction that related to the lis pendens only indirectly. The court should have focused only on whether the second lis pendens was filed in connection with a present lawsuit in which the relief sought "affect[s] the title to real property." Because, as shown above, the second lis pendens was filed in connection with such a lawsuit, it was not "groundless," and, consequently, not "spurious" either.[3]

### 3. Attorney Fees

¶ 34     The district court did not allocate petitioners' attorney fees between the first and second lis pendens. Having found both lis pendens groundless, it had no reason to do so. However, given our conclusion that the court erred in finding the second lis pendens groundless, we must set aside the attorney fees award. On remand, the court shall afford petitioners an opportunity to recover their attorney fees allocable to the first lis pendens.

---

[3] The dissent would hold otherwise, equating the spuriousness of a lis pendens with the groundlessness (or lack of a rational argument in support) of the claim in connection with which the lis pendens was filed. Remedies for a groundless or frivolous claim, however, are already available under C.R.C.P. 11 and section 13-17-102, C.R.S. 2019.

## *IV. Conclusion*

¶ 35      The district court's order is affirmed as to the first lis pendens and reversed as to the second lis pendens. The order awarding attorney fees is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE NAVARRO concurs.

JUDGE MILLER concurs in part and dissents in part.

JUDGE MILLER, concurring in part and dissenting in part.

¶ 36    I concur in the majority opinion's affirming the judgment with respect to the first lis pendens.  However, I respectfully dissent from the majority's reversal of that portion of the judgment invalidating the second lis pendens.[1]

## I.    Preliminary Statement

¶ 37    While the court held a half-day hearing on the petition and received testimony, the record before us does not include the transcript of that hearing.  Appellants are responsible for providing an adequate record on appeal; when an appellant fails to provide a transcript of a hearing, "we presume that the court's ruling declaring the lien invalid [under section 38-35-204, C.R.S. 2019, and C.R.C.P. 105.1] is supported by the record."  *Egelhoff v. Taylor*, 2013 COA 137, ¶ 13 (affirming district court's finding that lien was invalid); *see also Clements v. Davis*, 217 P.3d 912, 916 (Colo. App. 2009).

---

[1] For convenience, unless otherwise indicated, I refer to tenant's second lis pendens, recorded on March 1, 2018, as "the lis pendens."

¶ 38    While this circumstance alone normally could justify affirming the district court, this case turns on the construction of two documents (1) article 42 in the Lease Agreement (Lease) between Better Baked, LLC (tenant) and GJG Property, LLC (landlord), which grants tenant a right of first refusal (ROFR) to purchase the leased premises (Property); and (2) the First Amendment to Lease Agreement (Lease Amendment), which terminated the ROFR. Both of those documents are referred to in tenant's complaint in the underlying action, the waiver reference in the lis pendens is contained in the Lease Agreement, both documents are in the record before us, and the Lease Amendment clearly and unambiguously terminated tenant's ROFR months before the filing of the lis pendens.

## II.    Analysis

¶ 39    The district court found the second lis pendens to be groundless, spurious, and invalid for three reasons:

- the waiver of the ROFR contained no conditional language;

- the claims in tenant's complaint, even if meritorious, would not affect title to or the right of possession of the premises; and

- the conduct of tenant, by bringing in Larry N. Reed and Ramona L. Reed to purchase the property, acted as a constructive waiver of its ROFR.

¶ 40    I conclude that the termination of the ROFR by the Lease Amendment contained no conditional language, and therefore I do not consider the other two issues.

## A. Standard of Review

¶ 41    This case involves interpretation of the Spurious Liens and Documents statute, sections 38-35-201 to 38-35-204 (Act), C.R.S. 2019, and C.R.C.P. 105.1.  Statutory interpretation and court rule construction are questions of law subject to de novo review.  *Evans v. Evans*, 2019 COA 179, ¶ 10 (statute); *see also People v. Zhuk*, 239 P.3d 437, 438 (Colo. 2010) (court rule).  Tenant's contentions depend on the legal effect of the ROFR and the Lease Amendment and therefore present a question of law that we review de novo. *Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 53; *see also Dinnerware Plus Holdings, Inc. v. Silverthorne Factory Stores, LLC*, 128 P.3d 245, 246 (Colo. App. 2004) (interpreting a lease).

22

## B. Points of Agreement and Disagreement

¶ 42    To avoid unnecessary duplication, I will briefly indicate the following points or discussions in the majority opinion with which I agree (subject in some case to brief supplementation below):

- The factual and procedural background as set forth in Part I of the majority opinion.

- An ROFR may affect title to real property within the meaning of section 38-35-110(1), C.R.S. 2019.

- A holder of an ROFR may record a notice of lis pendens.

- This case involves a document rather than a lien under the Act.

- A spurious document includes one that is groundless.

- A groundless document is one to which the proponent can present no rational argument based on the evidence or the law in support of his or her claim.

- A notice of lis pendens can be a spurious document.

- A lis pendens is not groundless merely because the underlying claim may fail.

¶ 43    I disagree with the majority's (1) approach precluding the district court's review of the document terminating the ROFR and (2) conclusion that the lis pendens is not invalid.

### C. Scope of Hearing Under the Act and Rule 105.1

¶ 44    A court's goal in construing a statute is to determine and give effect to the General Assembly's intent.  *Hassler v. Account Brokers of Larimer Cty., Inc.*, 2012 CO 24, ¶ 15; *see also Battle N.*, ¶ 30.  "In discerning legislative intent, we look first to the statutory language itself, giving words and phrases their commonly accepted and understood meaning."  *Kerns v. Kerns*, 53 P.3d 1157, 1160 (Colo. 2002).  If the statute is clear, the statute must be applied as written.  *Hassler*, ¶ 15; *Battle N.*, ¶ 30.  Only if the statute is ambiguous do we consider legislative history or other rules of statutory construction.  § 2-4-203(c), C.R.S. 2019; *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010); *Westar Holdings P'ship v. Reece*, 991 P.2d 328, 331 (Colo. App. 1999).  We construe court rules consistent with rules of statutory construction.  *Zhuk*, 239 P.3d at 438-39.

¶ 45    Section 38-35-204(2) and (3) and Rule 105.1(b) and (c) require a hearing on a show cause order.  Neither the Act nor the Rule

define the term "hearing," but a division of this court carefully construed the term as used in section 38-35-204 in *Westar*, decided shortly after the enactment of the Act and adoption of Rule 105.1. The division looked to supreme court precedent, which held that the use of the term in a custody statute "included both the privilege to be present when a case is being considered and the right to present and support one's contentions by *evidence* and argument." *Westar*, 991 P.2d at 331 (citing *Brown v. Brown*, 161 Colo. 409, 412-13, 422 P.2d 634, 635 (1967)). The court in *Brown* also relied in part on the definition of "hearing" in the then-current edition of Black's Law Dictionary (3d ed. 1933) as including the introduction of evidence. *Brown*, 161 Colo. at 412, 422 P.2d at 635. As further support for its conclusion that the hearing under the Act must include the admission of evidence, the *Westar* division cited *Moody v. Larsen*, 802 P.2d 1169, 1171 (Colo. App. 1990), which held, in construing "hearing" under another statute, "[t]he convening of a hearing presupposes that evidence will be introduced during such proceeding." 802 P.2d at 1171.

¶ 46     The *Westar* division went further, however, and concluded that even if the term "hearing" was ambiguous, its interpretation was

supported by the legislative history, which showed that the hearing was intended as a "fail-safe" mechanism to ensure that no legitimate lien could be discharged. 991 P.2d at 331. The division also reasoned:

> A hearing without presentation of evidence concerning the validity of the recorded document, however, falls short of being the "fail-safe mechanism" envisioned by the General Assembly.
>
> Furthermore, interpreting the term "hearing" to foreclose consideration of evidence concerning the validity of a document would not effectuate a just or reasonable result. If the result of a petition were to be dictated simply by the skill of the pleader and legal argument, then even a petition having a sound substantive basis could result in the petitioner being ordered to pay the other party's attorney fees.
>
> Likewise, this interpretation could result in instances where a court makes a preliminary determination that documents are not spurious and awards attorney fees, only to determine later on the merits that the documents were in fact spurious. To avoid such results, a hearing on the merits of the underlying claim is appropriate.

*Id.* The division noted that Rule 105.1(d), which was adopted after entry of the judgment in the *Westar* case, provides that a court

26

may continue a show cause hearing for further proceedings and trial. *Id.* at 331-32.

¶ 47    Based on this analysis, the division held that "a hearing pursuant to section 38-35-204 may not be limited to the pleaded allegations and legal argument unless the parties agree to a waiver of the right to present and have evidence considered." *Id.* at 332.

¶ 48    This holding has been explicitly followed by two divisions of this court, *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 30, *aff'd,* 2016 CO 31; *Egelhoff*, ¶ 11, and implicitly and in substance by a third, *Battle N.*, ¶¶ 7, 58 (affirming district court's invalidation of quitclaim deeds based on extensive factual findings made after an evidentiary hearing). The *Westar* division's construction of the statutory term "hearing" has also been adopted by divisions of this court in three reported cases arising under other statutes. *People v. Scura*, 72 P.3d 431, 435 (Colo. App. 2003); *May v. Colo. Civil Rights Comm'n*, 43 P.3d 750, 754-55 (Colo. App. 2002); *People v. Duke*, 36 P.3d 149, 152 (Colo. App. 2001).

¶ 49    I have located no reported Colorado case in which the *Westar* approach has been questioned. Nor did the General Assembly change the language requiring a hearing in its amendment to

27

section 38-35-204 in 2012.[2]  Under the usual rules of statutory construction, the legislature's inaction to change the courts' interpretation of the hearing requirement is deemed to have ratified that interpretation.  *See, e.g., City of Manassa v. Ruff*, 235 P.3d 1051, 1056 n.4 (Colo. 2010); *Mason v. People*, 932 P.2d 1377, 1380 (Colo. 2005).

¶ 50    Accordingly, I would not depart from the *Westar* approach.

¶ 51    I respectfully disagree with the majority that the division in *Platt v. Aspenwood Condo. Ass'n, Inc.*, 214 P.3d 1060 (Colo. App. 2009), adopted a more restrictive approach than that in *Westar*.  At issue in that case was the validity of a contract by the condominium association (Association) to sell a new unit to the Platts.  *Id.* at 1063.  The unit was apparently constructed on commonly owned property, which, under section 35-33.3-312, C.R.S. 2008, of the Colorado Common Interest Ownership Act, required the approval of two-thirds of the existing unit owners.  *Id.* at 1063-64.  The Platts filed suit seeking specific performance and asserting several common law claims, and they filed a lis pendens related to the

---

[2] Similarly, the supreme court did not change the hearing language when it amended Rule 105.1 in 2007 and 2012.

action. *Id.* at 1063. The Association counterclaimed seeking a declaratory judgment and asserting a claim for slander of title. It also sought an order requiring the Platts to show cause why the lis pendens should not be declared spurious and invalid. *Id.*

¶ 52 The district court entered what appears to be single judgment in favor of the Association on all the Platts' claims and on the Association's counterclaims for declaratory judgment and slander of title, but in favor of the Platts on the spurious document claim. *Id.* On appeal, the division reversed the judgment as to three of the common law claims and affirmed the judgment in all other respects. *Id.* at 1068-69.

¶ 53 The nature of the proceedings in the district court in *Platt* is unclear. There is no indication in the opinion that the court conducted a separate show cause hearing. It is clear, however, that the district court did not rule on the show cause order until after it decided the merits of the case, including contract validity. *See id.* at 1068. And it did so only after the court had received and considered evidence on a complicated factual situation, *see, e.g., id.* at 1063, 1064-65, and engaged in an analysis of a complex statutory scheme, *see id.* at 1063-66. Only then did the court

29

conclude that the Platts had acted in good faith in filing the lis pendens. *Id.* at 1068.

¶ 54    In my view, therefore, *Platt* does not support the majority's declining to go beyond the literal language of the underlying complaint and the status of the proceedings in determining whether a lis pendens is groundless.

¶ 55    Nor am I persuaded that we should depart from *Westar* by the majority's citation to Professor Powell's treatise and out-of-state cases. The paragraph in the treatise cited by the majority also states: "The cloud on the title caused by the mere filing of a notice of lis pendens should be lifted if the complaint does not state a cause of action that may affect property." 14 Richard R. Powell, Powell on Real Property § 82A.05[3][a] (Michael Allen Wolf ed. 2000). As explained below, tenant's complaint does not state a cause of action for purposes of C.R.C.P. 12(b)(5). And the foreign cases cited involve different statutory schemes, without case law like that in Colorado holding that a hearing includes the right to submit evidence.

¶ 56    For all these reasons, I conclude that the scope of the show cause hearing was properly delineated in *Westar*. In the case before

us, we do not know what exactly transpired at the hearing because tenant has not provided the transcript. In my view, this case turns on the plain meaning of the Lease Amendment. Therefore, the case is properly resolved by examination of the Lease Amendment, along with article 42 of the Lease and the lis pendens. I believe, as discussed below, that the lis pendens in this case is invalid under either the *Westar* or the majority's approach.[3]

D. Law Applicable to Interpretation of the Lease Agreement

¶ 57   We review the ROFR and the Lease by applying well-established principles of contract law. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). While the primary goal of contract interpretation is to determine and give effect to the intent of the parties, their intent must be determined primarily from the language of the instrument itself. *Klun v. Klun*, 2019 CO 46, ¶ 18. "Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Ad Two*, 9 P.3d 376.

---

[3] This would not be true in every case. *See, e.g., Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 58; *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶¶ 4-10.

Extraneous evidence may be admitted to prove the parties' intent only where there is an ambiguity in the terms of the contract. *Id.* In determining whether provisions of an agreement are ambiguous, "we review the instrument's language and construe it consistent with the plain and generally accepted meaning of the words employed." *Klun,* ¶ 18.

¶ 58     Terms in a contract are ambiguous only "when they are susceptible of more than one *reasonable* interpretation." *Id.* at ¶ 19 (emphasis added); *see also Browder v. U.S. Fid. & Guar. Co.,* 893 P.2d 132, 133 (Colo. 1995). In the absence of such an ambiguity, courts do not look beyond the four corners of the agreement to determine the meaning intended by the parties. *Klun,* ¶ 18; *Ad Two,* 9 P.3d at 377. Ambiguity is not created by the mere fact that the parties differ in their interpretation of a contract. *Ad Two,* 9 P.3d at 377. In any event, tenant does not contend on appeal that the Lease Amendment is ambiguous.

### E. Construction of the Lease Amendment

¶ 59     In its briefs in this court, tenant consistently conflates the terms "waive, "waiver," and "waived" with the terms "terminate," "termination," and "terminated," and the district court did so as

32

well at points in its April 13, 2018, order declaring the lis pendens spurious and invalid. The Lease Amendment, however, does not. It provides in relevant part as follows:

> **THIS FIRST AMENDMENT TO LEASE AGREEMENT** ("First Amendment"), dated as of Nov 20, 2017 (Effective Date")[4] is between [landlord and tenant].
>
> R E C I T A L S
>
> . . . .
>
> B.    Pursuant to the terms of the Lease, Tenant has a right of first refusal to purchase all or a portion of the property (the "Property") on which the [leased premises are] located (the "ROFR"). Landlord is under contract to sell the Property (the "Transaction"), which sale is contingent on the waiver and termination of the ROFR. Tenant has agreed to waive and terminate the ROFR.
>
> C.    Therefore, Landlord and Tenant have agreed to amend the Lease to terminate the ROFR, as set forth herein. . . .
>
> A G R E E M E N T
>
> . . . .

---

[4] The typed date of "October __" was crossed out and replaced with "Nov 20." This handwritten change was initialed. The change is immaterial for purposes of the issue before us, because the lis pendens was filed four months after the later date.

33

1. **Waiver of ROFR.** Tenant acknowledges and agrees that it has received all information regarding the Transaction that it has requested and it hereby waives the ROFR with respect to the Transaction.

2. **Lease Amendment.** As of the Effective Date, the Lease is hereby amended to delete Article 42.

¶ 60     It is undisputed that the referenced "Transaction" involved a contract to sell the Property to Larry N. and Ramona L. Reed (Reeds). The Lease Amendment was signed on the "Effective Date" of November 20, 2017.

¶ 61     Several points are clear from the plain language of the Lease Amendment. First, the Lease Amendment set forth two separate substantive provisions, in which (1) tenant waived its rights under the ROFR with respect to the transaction and (2) the Lease was amended by deleting article 42 (which granted tenant the ROFR) as of the effective date — that is immediately upon the signing of the Lease Amendment on November 20, 2017. That these two provisions are separate and distinct is clear for several reasons:

- The two matters are set forth in the two separate paragraphs in the document, and neither paragraph refers to the other.

- Paragraph 1 specifically ties the waiver of the ROFR to the "Transaction." Paragraph 2 contains no such link to the transaction; it merely provides that article 42 is deleted as of the effective date.

- Nothing in the Lease Amendment provides that article 42 and the ROFR would be restored if the transaction did not occur.

- It was not necessary to amend the Lease for tenant to waive the ROFR with respect to the transaction. It could have done so by signing a writing containing the language that was set forth in paragraph 1 of the Lease Amendment or even through words and actions. *See Tarco, Inc. v. Conifer Metro. Dist.*, 2013 COA 60, ¶ 33 ("In general, a party may waive a contract provision where the party is 'entitled to assert a particular right, knows the right exists, but intentionally abandons that right.'") (citation omitted).

¶ 62    Second, there is no language in the Lease Amendment providing that the deletion of article 42 of the Lease is contingent on the sale to the Reeds.  Paragraph 2 of the Lease Amendment provides, without any condition or limitation, "As of the Effective Date [November 20, 2017, the date of signing], the Lease is hereby amended to delete Article 42."  It does not say, "As of the closing of the Transaction" or "conditioned on the closing of the Transaction," nor is there any other provision stating that the deletion of article 42 shall not become effective until the completion of the sale to the Reeds.

¶ 63    Tenant contends that language in recital B makes the waiver and termination of the ROFR contingent on the sale of the Property pursuant to the transaction.  But, as set forth above, the language of the recital states only that the "*sale* is contingent on the waiver and termination of the ROFR."  (Emphasis added.)  The Lease Amendment apparently fulfilled that contingency as between *those* parties, thus permitting them to go forward with the transaction.[5]  However, the fact that the termination of the ROFR was a

_____

[5] The complaint is silent on the disposition of the transaction.

36

contingency to a contract to which tenant was not a party does not mean that paragraph 2 of the Lease Amendment between landlord and tenant was contingent on the completion of the sale to the Reeds. As discussed above, the plain language of paragraph 2 unconditionally deleted article 42 of the Lease as of the effective date, the very date on which the Lease Amendment was executed. If the parties had intended to make the deletion of article 42 contingent on completion of the transaction, they would have said so.

¶ 64    Third, the parties reiterated in paragraph 6 of the Lease Amendment their intent that the deletion of article 42 was not subject to any future conditions by stating, "The Lease, as amended by this . . . Amendment, is *hereby* ratified and confirmed in all respects." (Emphasis added.)

¶ 65    Accordingly, I conclude that the Lease Amendment is clear and unambiguous on its face; that it clearly and unambiguously terminates the ROFR as of November 20, 2017; that tenant has failed to make a rational argument based on the documents on which it relies to support the lis pendens; that the lis pendens is

37

therefore groundless, spurious, and invalid; and that the district court's order so finding should be affirmed.

¶ 66    I reach the same result even if review under section 38-35-204 and Rule 105.1 were limited, as the majority urges, to considering only tenant's complaint and the status of the underlying action. The only fact allegation in the complaint related to the ROFR is that "upon information and belief, [landlord] is seeking to sell the Property without allowing [tenant] to exercise [tenant's] first right of refusal." It is questionable whether that conclusory allegation, on its own, would sufficiently state a claim to survive a motion to dismiss under C.R.C.P. 12(b)(5). *See Warne v. Hall*, 2016 CO 50, ¶ 27 (Allegations of a complaint were insufficient to state a claim in part "because a number of them were conclusory and therefore not at all entitled to an assumption that they were true."). In considering a complaint for purposes of such a motion, however, a court may consider not only the facts alleged in the complaint, but also documents attached to or referenced in the complaint. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011); *Peña v. Am. Family Ins. Co.*, 2018 COA 56, ¶ 14; *Yadon v. Lowry*, 126 P.3d 332, 336 (Colo. App. 2005).

¶ 67    I see no reason why the same principle should not apply in a Rule 105.1 action. Otherwise, a plaintiff with a deficient claim could survive both a motion to dismiss and a Rule 105.1 petition to show cause "simply by not attaching a dispositive document upon which the plaintiff relied." *Yadon*, 126 P.3d at 336 (citation omitted).

¶ 68    An appellate court "may uphold the grant of a C.R.C.P. 12(b)(5) motion to dismiss only when the plaintiff's factual allegations do not, as a matter of law, support the claim for relief." *Ritter*, 255 P.3d at 1088. While we must accept all factual allegations in the complaint as true and view them in the light most favorable to tenant, we are not required to accept as true legal conclusions that are couched as factual allegations. *Id.* Further, the legal effect of documents properly before the court is determined by their contents rather than by allegations in the complaint. *Peña*, ¶ 15; *see also Stauffer v. Stegman*, 165 P.3d 715, 716 (Colo. App. 2006).

¶ 69    Here, tenant's complaint referenced the Lease. The Lease includes the Lease Amendment, by virtue of paragraph 6 of the Lease Amendment, which provides in part, "The Lease, as amended by this . . . Amendment, shall constitute the entire agreement and

understanding of the parties." In any event, the lis pendens itself refers to the waiver of tenant's ROFR, and the waiver is contained in the Lease Amendment. I therefore conclude that both the district court and this division are entitled to consider those underlying documents, which contain the ROFR on which tenant relies and its deletion from the Lease. Taking those documents into account, it is clear that the ROFR did not exist when the lis pendens was filed, and defendant has failed to state a claim upon which relief may be granted. Because my analysis above is also limited to the plain language of those documents, I reach the same result under the established case law and the approach taken by the majority.

¶ 70 Finally, this case provides a troubling example of why a court should look beyond the literal language of a complaint in a spurious document case. More than two years have passed since the lis pendens was filed. Had the district court followed the more restrictive approach of the majority and refused to invalidate the lis pendens, the Property would have been tied up for at least those two years. This seems unjust, given the purpose of the Act and Rule 105.1 as well as my view that the ROFR was clearly and

40

unambiguously terminated by the Lease Amendment (referred to in the lis pendens) several months before the filing of the lis pendens.

## III.   Conclusion

¶ 71    I concur with the majority in affirming that part of the district court's judgment holding the first lis pendens invalid, but, for the reasons stated, I would also affirm the district court's invalidation of the second lis pendens.